# Ruch, Appellant, v. York.

*Contract—Building contract—Arbitration clause—Scope of arbitration clause—Nonfulfillment.*

1. The parties to a building or construction contract may legally provide therein that disputes arising out of the contract shall be submitted for decision to the architect or engineer, and that his conclusion or judgment shall be a final adjudication of the questions submitted. Such submission may include the power to determine the right of the parties to liquidated damages under the terms of the contract.

2. The right of trial by jury, however, is not to be taken away by implication, and in order to oust the jurisdiction of the courts it must clearly appear that the subject-matter of the controversy was within the prospective submission.

3. An agreement of submission is not to be extended by implication beyond its plain words, and a provision therein to submit questions that may arise as to the fulfillment of a contract does not give the right to pass on a claim for damages for nonfulfillment.

4. Where a sewer contract provides that the engineer "shall in all cases determine the amount, quality, acceptability and fitness of the several amounts of work and material, and shall decide all questions which may arise as to the measurement of quantities and the fulfillment of this contract . . . . and shall determine all questions respecting the true construction or meaning of the plans and specifications," and the contract contemplates extra work, whether additional sewers and removing and relaying paving on the streets in which they were laid, and the depth of excavations for house connections were "work not otherwise provided for" in the contract and to be paid for as extra work are questions for the engineer to determine.

5. The decision of an engineer in such case may be erroneous and not in accord with the true intent of the contract, but that does not invalidate it unless it is tainted with fraud or misconduct to which the city was a party.

6. Where a city construction contract provides for the construction of sewers at a unit price and it is distinctly stipulated in the contract

and specifications that the quantities of work shown on the plans are only approximate, the contractors are entitled to unit prices only for additional sewers, and not for compensation for extra work under a clause in the contract relating to extra work, and providing for its compensation. The same rule applies to a claim for extra excavations for house trenches of a greater depth than that specified in the contract where the cost of excavation is fixed on a unit basis; and also applies to a claim for removing and placing pavements involved in laying additional sewers.

7. A municipality is bound by the terms of a construction contract which it has executed and not by the unauthorized representations or declarations of its officers which would change the written stipulations of the agreement.

8. Where a sewer construction contract confers exclusive jurisdiction on the engineer to construe the meaning of the plans and specifications, and to determine what is and what is not extra work, but does not confer upon him generally the power to construe the contract as a whole, the engineer exceeds his jurisdiction in passing upon a claim for damages for failure of the city to provide an outlet for sewers, where his decision involves the construction of the whole contract, and not simply of the plans and specifications.

9. An engineer has no power to pass upon a claim for damages for delay in the fulfillment of a municipal contract, where there is no provision in the arbitral clause conferring such jurisdiction upon him.

Argued May 15, 1911. Appeal, No. 122, Jan. T., 1911, by plaintiffs, from judgment of C. P. York Co., April T., 1911, No. 35, for defendant on demurrer to statement in case of George W. Ruch and Joseph N. Ruch, trading as George W. Ruch & Company v. York City. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Assumpsit to recover a balance alleged to be due on a contract for the construction of a sewer system.

Demurrer to statement. Before BITTENGER, P. J.

The items of the plaintiffs' claim were as follows: (a) $12,406.40, for work on so-called "dotted line" and "no line" streets; (b) $2,704.76, for extra excavations for house connections below the average depth of six feet; (c) $1,610.11, for removing and relaying paving on streets over trenches dug by plaintiffs; (d) $47,688.69, alleged

damage by reason of the failure of the city to provide an outlet for the sewers laid by plaintiffs; (e) $5,388.15, for cost of cleaning sewers to enable the city to inspect the same before acceptance; and (f) $10,865.98, for amount deducted by the city as liquidated damages suffered by it for failure to complete work on or before January 1, 1906, as provided in the contract.

Notice by advertisement was given by the city that sealed proposals would be received for the construction of a system of sewers in the city of York. Intending contractors were invited to inspect the plans, specifications and form of contract at the office of the resident engineer of the board of public works. The letting of the work was to be in three separate contracts, denominated contract " A," contract " B " and contract " C," the latter of which was to be a discharge sewer with overflow chamber and all appurtenances. Contract "A " and contract " B " were let, the latter to the plaintiffs on March 28, 1904; contract " C " was not let and the sewer therein provided has not been constructed. Contract " B " was let at unit prices, work was provided for and was to be paid for at the cost thereof plus fifteen per cent. On April 23, 1904, the plaintiffs began work under the contract and proceeded with it until December 22, 1906, when, the engineer having certified that the plaintiffs had not made the progress required by the contract and had unreasonably and unnecessarily delayed the work, the city under art. 7 of the contract took charge of and completed the work. On October 1, 1907, the engineer in accordance with art. 12 of the contract, made a final estimate of the amount of work done and certified that the work was completed according to the terms of the contract on September 6, 1907.

The statement avers that the contract was entered into by the plaintiffs upon the faith of the plans, specifications and form of contract shown to them prior to their bid at the office of the resident engineer, and upon the faith of the statements, explanations and directions of the engineer

at the said time and place and that plaintiffs made their bid and executed said contract in reliance thereon. It is further averred that the plans indicated by certain marks the location of the streets where the sewerage system was to be constructed, that "solid lines" were explained to represent sewers to be constructed at the present time, and "dotted lines" extensions to be made in the future; that the plans and specifications failed to show the depth of the house connections of the sewerage system and the paving and the character thereof required to be removed and replaced by the contractor; that the engineer instructed the plaintiffs to bid only on the "solid lines" streets as the location of the sewer; that the engineer represented that the house connections would be at the depth of six feet and that if the contractor was required to go any deeper he would be paid therefor as extra work under the contract; that the plans exhibited to the plaintiffs showed the paving on streets and alleys and the character thereof which was to be removed and replaced as provided in the contract; that the engineer represented that an outlet system would be provided by the defendant for the sewers to be constructed under contract "B" and that defendant would provide temporary outlets for the work covered by contract "B" in case the outfall part of the sewerage system, covered by contract "C," should not be complete until it should be completed or progress sufficiently made to furnish ample outlets for the sewers to be constructed under the contract.

The several items of the plaintiffs' claim, except the one for failure to provide an outlet, were submitted to and disallowed by the engineer acting as an arbitrator under the third clause of the contract. The contract, specifications and notice to contractors provide, inter alia, as follows:

Art. III of contract. "All the work under this contract shall be done to the satisfaction of the engineer, who shall in all cases determine the amount, quality, acceptability and fitness of the several amounts of work and ma-

terials which are to be paid for hereunder, and shall decide all questions which may arise as to the measurement of quantities and the fulfillment of this contract on the part of the contractor, and shall determine all questions respecting the true construction or meaning of the plans and specifications, and his determination and decision thereon shall be final and conclusive; and such determination and decision in case any question shall arise shall be a condition precedent to the right of the contractor to receive any money hereunder."

Art. IV. "The construction of the work shall be in all respects according to the notice and proposal hereto annexed, the specifications hereinafter set forth and the plans exhibited, which notice, proposal, plans and specifications are made part of this contract."

Art. V. "The contractor agrees that the quantities stated in the notice to bidders, or at other times, are only for the purpose of comparing, on a uniform basis, the bids offered for the work under this contract."

Art. VII. "If the work to be done under this contract shall be abandoned . . . . or if at any time the engineer shall be of the opinion, and shall so certify in writing to the board, that the conditions herein specified as to the rate of progress are not fulfilled, or that the work, or any part thereof, is unnecessarily or unreasonably delayed . . . . the board may notify the contractor to discontinue all work . . . . and the board may thereupon . . . . complete the work . . . . and charge the expense thereof to the contractor."

Art XI. "The engineer shall make an approximate monthly estimate of the value of the work done and materials incorporated into the work, whenever said monthly work exceeds $500 in value, and eighty per cent of such estimated value will be paid to the contractor when approved by the board."

Art. XII. "The engineer shall, as soon as practicable after the completion of the work of this contract, make a final estimate of the amount of work done under this con-

tract, and the value thereof, and the city shall, within thirty days after such final estimate is so made and is approved by the board, pay the entire sum so found to be due hereunder, after deducting therefrom all previous payments, and also all percentages and amounts to be kept and retained under the provisions of this contract. All prior estimates and payments shall be subject to correction in the final estimate and payment."

Art XIV. "The contractor shall do any work not herein otherwise provided for when so ordered in writing by the engineer, and shall, when requested to do so, furnish itemized statements of the cost of the work ordered, and give the engineer access to accounts, bills and vouchers relating thereto."

Art. XV. "If the contractor claims compensation for extra work not ordered as aforesaid, but nevertheless approved by the engineer, he shall, within one week after the beginning of such work, make a written statement of the nature of the work performed, to the engineer, and shall, on or before the fifteenth day of the month succeeding that in which any extra work shall have been done, file with the engineer an itemized statement of the details and amount of such work; and unless such statements shall be made as so required, his claim for compensation shall be forfeited and invalid, and he shall not be entitled to payment on account of any such work."

Art. XVI. "If the contractor is obstructed or delayed in the prosecution or completion of the work by . . . . any delay on the part of the city in doing the work or furnishing the materials to be done and furnished by it, the contractor shall have no claim for damages for any such cause or delay, but he shall in such cases be entitled to such extension of the time hereinafter specified for the completion of the work as the engineer shall in writing certify to be just and proper, provided, however, that claim for such extension of time is made by the contractor in writing within a week from the time when any such alleged cause for delay shall occur."

Art. XVII. "It is agreed that the contractor shall complete all of the work under this contract on or before the 1st day of January, 1906, and it is further expressly agreed that time is of the essence of this contract, and the contractor agrees that the city is authorized to deduct and retain out of moneys that may be due or become due to him under this agreement the sum of fifty ($50.00) dollars per day as liquidated damages for each and every day that the work is not completed beyond the time herein stipulated therefor."

Sec. A, clause V of Specifications. "All work during its progress and on its completion shall conform to the lines and grades given by the engineer, and shall be built in accordance with contract plans and directions given by him from time to time, subject to such modifications and additions as shall be deemed necessary by him during its execution."

Clause VI. "The quantities of work shown on the plans and herein stated are only approximate, and are given for the purpose of balancing the bids. As the work progresses it is expected that some of the sewers shown may be omitted, due to the embodiment of existing sewers within the new system, the desirability of which can be determined only after the work has been opened up; and that some sewers may be added to the plans during the progress of the work, due to the building up of additional streets or to other causes. It is distinctly understood that the board reserves the right to add to or take from the total amount of work anticipated under each contract up to the limit of twenty per cent thereof, in accordance with the distinct stipulation specified in article V of this contract."

Sec. C, clause XXXIX. "All work done on excavation as above specified or as may be required, shall be included in the prices bid per running foot of sewer construction, according to the notice to contractors and the proposal annexed."

Sec. E, clause LXIV. "The surface of streets, where

paved or macadamized, shall have the same materials replaced and deficiencies supplied, and shall in all cases be left in as good a condition as it was previous to the commencement of the work."

Clause XXII of the Proposal. "For extra work, if any, performed under art. 14 of the annexed contract, the reasonable cost of the work, as determined by the engineer, plus fifteen per cent of such cost.. The prices bid per running foot for furnishing and laying .sewers include excavation . . . . refilling trenches, replacing all structures interfered with, resurfacing of streets, and all other work and materials, except that to be paid for separately, as stated in the contract and specifications."

Notice to Contractors. "The quantities stated in this proposal are approximate only, and subject to change without liability by the board."

The court entered judgment for defendant on the demurrer.

*Error assigned* was the judgment of the court.

*H. C. Niles,* with him *V. K. Keesey* and *J. S. Black,* for appellants.—The power to decide whether work has been done in accordance with a contract and whether a contract has been completed in accordance with its terms, cannot by implication be enlarged so as to include the right to determine what shall be paid by way of damages for non-fulfillment: Somerset Boro. v. Ott, 207 Pa. 539.

The right to trial by jury is not to be taken away by implication: Lauman v. Young, 31 Pa. 306; Dobbling v. Ry. Co., 203 Pa. 628; Jacob v. Weisser, 207 Pa. 484.

The contractor is not answerable for delay caused by default of the owner's engineer, or by a change in the plans: White v. School District, 159 Pa. 201; Lilly v. Person, 168 Pa. 219; Pittsburg Iron & Steel Engineering Co. v. Tube Works, 184 Pa. 251; Hucketein v. Kelly, 152 Pa. 631.

Whether a sum named in a contract as compensation

for delay is a penalty or liquidated damages, depends upon the intention of the parties, and the circumstances of the particular case. The presumption is that it is intended as a penalty: Clements v. R. R. Co., 132 Pa. 445; Kunkel v. Wherry, 189 Pa. 198.

The engineer has no power over the express agreement of the parties, the terms of which are undisputed. He cannot make a new agreement. Such estimates are not conclusive: Drhew v. Altoona, 121 Pa. 401; Fisher v. South Williamsport Boro., 1 Pa. Superior Ct. 386; Koch v. Kuhns, 6 Pa. Superior Ct. 186; Pitts. Terra Cotta Lumber Co. v. Sharp, 190 Pa. 256; Payne v. Roberts, 214 Pa. 568; Jacob v. Weisser, 207 Pa. 484; Chandley v. Cambridge Springs Boro., 200 Pa. 230.

A party cannot take advantage of his own or his engineer's fault in not reducing to writing an order for extra work, or in preventing strict compliance with some other formality: Focht v. Rosenbaum, 176 Pa. 14; Pitts. Terra Cotta Lumber Co. v. Sharp, 190 Pa. 256; Payne v. Roberts, 214 Pa. 568; McAvoy v. Insurance & Trust Co., 27 Pa. Superior Ct. 271; McManus v. Philadelphia, 211 Pa. 394; Filbert v. Philadelphia, 181 Pa. 530; Clark & Sons Co. v. Pittsburg, 217 Pa. 46.

An arbitrator has no power to determine questions involving his own failure to perform his duty: Hunn v. Penna. Institution for the Blind, 221 Pa. 403.

*John L. Rouse,* city solicitor, with him *James St. Clair McCall,* for appellee.—The very act of submission implies a promise by the parties to abide by the determination of the person to whom the matter is referred, even though there is no express agreement to abide by the award when made: Somerset Borough v. Ott, 207 Pa. 539; McManus v. McCulloch, 6 Watts, 357; Bowen v. Cooper, 7 Watts, 311.

There was no power in the resident engineer, or any other agent of the city, to change or modify the contract: Fisher v. South Williamsport Boro., 1 Pa. Superior Ct. 386; O'Malley v. Olyphant Borough, 198 Pa. 525; Edsall

v. Jersey Shore Boro., 220 Pa. 591; Carpenter v. Yeadon Borough, 208 Pa. 396.

It was incumbent upon the appellants by the express terms of the contract to complete the work before January 1, 1906, and the consequences of their failure were expressly agreed to by them. The right to these damages arises entirely out of the terms of the contract, and not from anything extraneous to it: Clark & Sons Co. v. Pittsburg, 217 Pa. 46; Conneaut Lake Agr. Assn. v. Pittsburg Surety Co., 225 Pa. 592.

OPINION BY MR. JUSTICE MESTREZAT, July 6, 1911:

This is an action of assumpsit brought to recover a balance alleged to be due on a contract to construct part of a sewerage system in the city of York, and damages arising out of the contract. The statement claims for work which is alleged to be extra and payable for as such and not regular work payable for at unit prices; for the cost of cleaning the sewers for inspection; for damages by reason of the city's failure to provide an outlet for the sewers laid by plaintiffs; and for the amount deducted by the city as liquidated damages for failure to complete the work within the time required by the contract. The defendant filed a demurrer to the statement and alleged as causes therefor that the statement disclosed the several items of the claim to be within the scope of the arbitration article of the contract and the decision by the arbitrator was final and conclusive, and that some of the items were lumped charges and not sufficiently specific. The demurrer was sustained by the court and judgment was entered for the defendant. The plaintiffs have appealed.

It is settled in this state that the parties to a building or construction contract may legally provide therein that disputes arising out of the contract shall be submitted for decision to the architect or engineer, and that his conclusion or judgment shall be a final adjudication of the questions submitted. Such submission may include the power to determine the right of the parties to liquidated damages

under the terms of the contract: Clark & Sons Co. v.
Pittsburg, 217 Pa. 46; Conneaut Lake Agricultural As-
sociation v. Surety Company, 225 Pa. 592. The right of
trial by jury, however, is not to be taken away by impli-
cation, and in order to oust the jurisdiction of the courts it
must clearly appear that the subject-matter of the con-
troversy is within the prospective submission: Lauman
v. Young, 31 Pa. 306. An agreement of submission is not
to be extended by implication beyond its plain words, and
a provision therein to submit questions that may arise as
to the fulfillment of a contract does not give the right to
pass on a claim for damages for nonfulfillment: Somerset
Borough v. Ott, 207 Pa. 539.

Art. 3 of the contract between the parties to this liti-
gation provides as follows: "All the work . . . . shall be
done to the satisfaction of the engineer, who shall in all
cases determine the amount, quality, · acceptability and
fitness of the several amounts of work and materials . . · .,
and shall decide all questions which may arise as to the
measurement of quantities and the fulfillment of this con-
tract . . . ., and shall determine all questions respecting
the true construction or meaning of the plans and specifica-
tions, and his determination and decision thereon shall
be final and conclusive; and such determination and deci-
sion in case any question shall arise shall be a condition
precedent to the right of the contractor to receive any
money hereunder." We think it clear that the items of the
plaintiffs' claim for work on the so-called "dotted line"
and "no line" streets, for excavations for house connec-
tions at a greater depth than six feet, and for removing
and relaying paving on streets over trenches dug by the
plaintiffs are within the jurisdiction of the engineer under
the arbitration article of the contract and that his adjudi-
cation was final. The parties submitted all the items of
the claim, except the item for failure to provide an outlet
for the sewers laid by the plaintiffs, and, after presenting
their contentions pro and con, the arbitrator rendered a
decision which disposed of every item of the claim with the

one exception. Whether these items were extra work or were to be compensated for at unit prices was for the engineer to decide under the arbitration article of the agreement. It specifically provides that, "the engineer shall decide all questions which may arise as to the measurement of quantities and the fulfillment of the contract, . . . . and shall determine all questions respecting the true construction or meaning of the plans and specifications." It was the duty of the engineer to make the measurements for the original as well as for the extra work, and it necessarily required him to determine what was extra work and what was the regular work to be paid for at unit prices. This is one of the questions which he especially would be competent to determine and which arose as to the "measurement of quantities." The location, extent and character of the work, the character and quantity of materials, etc., are shown by the plans and specifications, and hence whether additional sewers and removing and relaying paving on the streets in which they were laid, and the depth of excavations for house connections were "work not herein otherwise provided for" and to be paid for as extra work depended upon "the true construction or meaning of the plans and specifications," and hence were questions for the arbitrator to determine.

There is no sufficient allegation in the statement that the decision of the engineer or his final estimate was made fraudulently or collusively, neither is there any corruption or misbehavior on the part of the engineer sufficiently averred. There is no allegation that the city used any fraudulent means to procure the decision or estimate of the engineer. His action as arbitrator, therefore, cannot be set aside or invalidated on the ground of fraud, collusion or misbehavior in the performance of the duties imposed by the contract. It is true the statement avers that "the engineer erroneously, wrongfully, contrary to the terms of said contract, and as the plaintiffs believe and expect to prove, at the direction of the board of public works, calculated the amount due the plaintiffs for said

work in the manner provided in the said contract for work on sewers indicated on the said plans by solid lines." But this is not sufficient to charge the arbitrator with fraud, collusion or misbehavior. There are no facts stated which would warrant the conclusion that the arbitrator acted other than as his best judgment dictated. The decision may be erroneous and not in accord with the true intent of the contract but that does not invalidate it unless it is tainted with fraud or misconduct to which the city was a party. It may be assumed that the board of public works as well as the plaintiffs urged on the arbitrator as forcibly as they could their construction of the contract, but that would not justify setting aside his decision. Prior to making the decision, the engineer heard both parties orally and in writing, and gave "full deliberation to the arguments of counsel thereon."

The arbitrator was right in deciding that under the terms of the contract the plaintiffs were not entitled to pay for extra work embraced in the first three items of the plaintiffs' claim. The first item is for work done on the so-called "dotted line" and "no line" streets. The basis of the claim is the alleged statements and representations made by the engineer at the time the plaintiffs inspected the plan of the streets and before they made their bid and entered into the contract. It is a sufficient answer to the claim that the parties must stand upon their contract, and that the engineer had no authority to change the terms of the agreement which the city made. "Notice to Contractors" conferred no such authority. The plans, specifications and form of contract were at the office of the engineer of the board of public works for inspection by any intending contractor, but no authority was given the engineer to alter or change them in any particular by any agreement, statement or representation, written or oral. It is clear, we think, that the contract itself gives no ground for the plaintiffs' contention in this respect. The agreement for the work to be done under contract " B " was at unit prices, and did not provide for the laying of sewers on

any certain or definite number of streets. It is true that the "solid line" streets upon the plans were supposed to represent sewers to be constructed at the time of the contract, and that "dotted line" streets represented the extension to be made in the future, but this part of the plans must be construed in the light of the provision of clause 6 of sec. A of the specifications which provides that the sewers to be constructed on the plans may be omitted from or added to the plans during the progress of the work within a limit of twenty per cent of the work originally contemplated. It was, therefore, anticipated that some of the sewers provided for in the contract and shown on the plans should be omitted and that others should be added to the plans during the progress of the work. The limit of departure from the amount of work stipulated in the agreement was twenty per cent of the work originally provided for, and it is not averred in the statement that the limit was exceeded. It is clear, therefore, that the construction of additional sewers was not extra work for which the contractor was entitled to pay as such, but was work for which the contractor was entitled to receive compensation at unit prices. Again, we think the extra work contemplated by the parties was such as was not specifically provided for in the agreement. Article 14 of the contract provides that "the contractor shall do any work not herein otherwise provided for when so ordered in writing by the engineer," and clause 22 of the proposal provides compensation for such work as follows: "For extra work, if any, performed under art. 14, of annexed contract, the reasonable cost of the work, as determined by the engineer plus fifteen per cent of such cost." The laying of the sewers was to be paid for at unit prices, and any additional work of that character was to be paid for at such prices and not as extra work as provided in clause 22 of the proposal. It is distinctly stipulated in the contract and specifications that the quantities of work shown on the plans were only approximate, clearly disclosing that, as provided in clause 6, of sec. A, of the specifications,

the city had the right to require the contractor to lay additional sewers for which they should be compensated at unit prices.

The second item of the claim is for extra excavation for house lateral trenches of a greater depth than six feet. The arbitrator allowed the contractor for this work at unit prices which was clearly right. The depth of the house connections was not fixed by the contract and hence the excavations for making such connections were to be paid for under sec. 39 of his specifications, which provides that: "All work done on excavations as above specified or as may be required shall be included in the prices bid per running foot of sewer construction." This claim, like the one just considered, is based on the alleged representations of the engineer, which, as we have seen, were not sufficient to modify or change the stipulations of the contract. The contractor was dealing with the municipality and the latter is bound by its contract and not by the unauthorized representations or declarations of its officers which would change the written stipulations of that agreement: Martin v. Berens, 67 Pa. 459; Phillips v. Meily, 106 Pa. 536.

The third item of the claim is for removing and replacing pavements on streets in which trenches were dug and additional sewers were laid by the plaintiffs. The arbitrator allowed compensation for this work at unit prices, and declined to allow for it at the rate at which extra work was to be paid for. This work comes within the provisions of sec. 22, providing for payment at the prices per running foot for resurfacing streets, and of sec. 64 of the specifications, and the arbitrator was right in holding that it was not extra work within contemplation of the contract which entitled the contractor to additional pay for the work. The engineer was authorized to require additional sewers to be laid at unit prices, and it follows that the additional repaving necessary to complete such work should be paid for at the prices fixed for original work of the same character.

We do not agree with the learned court below that the arbitration clause confers jurisdiction upon the engineer to determine the plaintiffs' right to or the amount of damages alleged to be due by reason of the failure of the city to provide an outlet for the sewers constructed under contract "B," or to determine the right of the plaintiffs to recover the liquidated damages withheld by the city for failure to complete the work within the time specified in the contract. Unless clearly conferred by the arbitration article, the arbitrator had no authority to pass upon these questions and thereby deprive the plaintiffs of their right to trial by jury. The burden is upon the defendant to point out the provision in art. 3 of the contract which empowers the arbitrator to pass upon these questions, and failing to do so the plaintiffs have the right to maintain this action and have their rights adjudicated by the court. Turning to the article in question, we see that it authorizes the engineer to determine the amount, quality, acceptability and fitness of the work and materials, to decide all questions which may arise as to the measurement of quantities and the fulfillment of the contract on the part of the contractor, and to determine all questions respecting the true construction or meaning of the plans and specifications. His decision on these questions is made final and conclusive.

It will be observed that the article does not confer upon the engineer generally the power to construe the contract, and thereby deprive the plaintiffs of the right to submit that question to the court. The extent of the authority of the engineer in that respect is his power to determine the "true construction or meaning of the plans and specifications." As suggested above, he may determine what is extra work within the meaning of the plans and specifications. The contract was let at unit prices, but provision was made for extra work to be paid for at the prices therein specified. The plans and specifications provide what is regular work and what is extra work, and in case of dispute it is the duty of the engineer to interpret the plans

and specifications and determine the character of the work. Having done so, he then ascertains the amount, quality and acceptability of the work.

The question presented in the claim for damages for failure to provide an outlet for the sewers requires the construction of the whole contract; and not simply of the plans and specifications. It is a question which must be determined by the construction of the several parts of the agreement which is made up of the notice to bidders, the contract proper, the plans and specifications and all other matter relating thereto. It cannot be seriously contended that the engineer, as arbitrator, would have jurisdiction to determine whether the parties had entered into a contract for the construction of the sewers, or what damages the plaintiffs had sustained if the defendant had refused to permit the plaintiffs to furnish the materials and do the work, or to determine what damages the city had sustained if the plaintiffs had declined to furnish the materials and construct the sewers. With equal reason, it seems to us, that the arbitrator is without jurisdiction to determine whether the contract, as contained in the several parts thereof, contemplated that the city should, by the construction of a sewer under contract " C " or by other means, furnish an outlet for the sewers constructed by the plaintiffs under contract ".B," and if such an outlet was contemplated by the parties and provided for in the contract, what damages the plaintiffs sustained by the failure of the defendant to keep its covenant. Keeping in view the settled rule that the court is not to be deprived of its jurisdiction without clear and plain terms in the arbitration clause, we think this is the proper interpretation of the article in contract "B," conferring arbitral powers on the engineer. There is no express provision in any part of the agreement requiring the plaintiffs to cleanse the sewers, and the question does not depend simply upon the construction of the plans and specifications, but upon an interpretation of the whole agreement. The statement avers that the plaintiffs

were not obliged under the contract to clean the sewers, and that if the city had provided an outlet, as required by the agreement, the expense of such cleaning would have been trivial. This claim, we think, should go to a court and jury.

By art. 17 of the agreement the contractor was required to complete the work by January 1, 1906, and the city was authorized to deduct out of moneys due the contractor $50.00 per day as liquidated damages for every day the work was not completed beyond the time specified. The arbitrator decided that the city had the right to retain a certain amount under this provision of the agreement. How the arbitrator arrived at the amount for which he allowed a credit does not appear, nor is it material, as we do not think he had the authority to adjudicate the question. It is argued by the defendant that the plaintiffs could only be relieved from their default under this article of the contract by an application to the engineer for an extension of time under art. 16 and, failing to make such application, the city had the right to retain the per diem sum as liquidated damages for any time the contract was not completed beyond January 1, 1906. It is not averred in the statement that the plaintiffs made an application and were refused an extension of time in which to complete the work, but it is averred that the failure to complete the contract "was not due to any fault or neglect on their part but was the result of the acts, omissions and requirements of the engineers, the board of public works and the defendant as hereinbefore set forth." These "acts, omissions and requirements" did not consist in obstructing or delaying the contractor "in doing the work or furnishing the materials to be done and furnished by the city" which prevented the contractor from claiming damages, and hence the plaintiffs were relieved from making an application for an extension of time as required by art. 16 of the contract. That article of the agreement provides that if the contractor is obstructed or delayed in the prosecution or completion of the work by any delay

on the part of the city in doing the work or furnishing the materials he can have no claim for damages for such delay, but is required to make an application to the engineer for an extension of time. The averment in the statement, therefore, takes it out of the provision of this part of the agreement, and alleges that the failure to complete the work was the "acts, omissions and requirements" of the defendant, of a character other than those named in art. 16 of the contract. If the failure to complete the work as required in the agreement consisted in such neglect or default of the city as is not relieved against in the contract, the responsibility must rest with the city and not with the plaintiffs, and it would deprive the defendant of the right to retain for such delay any sum as liquidated damages under clause 17 of the contract. There is no provision in the arbitral clause conferring jurisdiction upon the engineer to determine this question. We have distinctly ruled that a provision in a building contract to submit questions that may arise as to the fulfillment of a contract does not give the right to pass on a claim for damages for nonfulfillment: Somerset Borough v. Ott, 207 Pa. 359. It is equally apparent that such authority is not given by the clause which confers power upon the arbitrator "respecting the true construction or meaning of the plans and specifications." This is the only part of the clause under which it can be pretended that the arbitrator has jurisdiction to determine the right of the defendant to retain liquidated damages, and as this right is conferred by the contract proper and not by the plans or specifications it is manifest that the clause does not confer authority to determine the question.

We do not think the omission to itemize the claim for damages for failure to construct an outlet or the claim for liquidated damages retained by the defendant defeats the plaintiffs' right of action for either of these items. If the defendant city desires a more detailed statement of either item of the claim, and such can be given, it may be obtained by an application for a bill of particulars.

For the reasons stated, the judgment of the court below sustaining the demurrer is reversed with a procedendo.