Dickens, Appellant, *v.* Pennsylvania Turnpike Commission.

Argued Nov. 30, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Walter Biddle Saul,* with him *Saul, Ewing, Remick & Harrison,* for appellant.

*Walter B. Gibbons,* with him *John D. Faller, N. L. Wymard,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 2, 1945:

This is an appeal from the decree of the court below discharging a rule to show cause why arbitration should not proceed in the manner provided in the agreement between the parties. The Pennsylvania Turnpike Commission, an instrumentality of the Commonwealth of Pennsylvania, created by the Act of May 21, 1937, P. L. 774, entered into a contract dated June 22, 1939, with the plaintiff, Dickens, for the construction of a part of the Pennsylvania Turnpike situate in Somerset County. The work on this contract was completed on July 3, 1940.

The basis of payment was the amount of ground removed pursuant to the contract. The parties could not agree as to this amount, and plaintiff invoked the arbitration clause of the contract. That clause provides, inter alia, as follows: "Arbitration. All questions or disputes respecting any matter pertaining to this contract, or any part thereof, or any breach of said contract, shall be prepared in writing by the contractor in detail, in triplicate, and submitted to the chief engineer of the Pennsylvania Turnpike Commission. *Reference of questions as herein provided shall not be made until after final quantities have been determined and must be made within thirty (30) days thereafter and prior to payment therefor.* The chief engineer will render a decision in writing on all items or questions in dispute. (Italics supplied.)

The Turnpike Commission contends that the dispute had not been submitted to the Chief Engineer within thirty days after final quantities had been determined, as required. Plaintiff contends that there never was a determination of "final quantities" and therefore the 30 day limitation period never began to run. His argument is that there is nothing in the contract which says who shall determine final quantities and that therefore they must be determined by mutual agreement. As to this contention the court below pertinently says: "If there were an agreement between the parties as to the quan-

tities there would be no reason to arbitrate. If there were no agreement, the time when the matter could be submitted to the Chief Engineer under the petitioner's construction would never arrive, for the contract says it must be made within thirty days after final quantities have been determined."

Section 49 of the "General Conditions" of the contract provides, inter alia, as follows: "To prevent all disputes and litigation, the engineer shall in all cases determine the amount or quantity of the several kinds of work and the quality of materials which are to be paid for under this contract; he shall determine all questions in relation to the project and the construction thereof; and in all cases decide every question which may arise relative to the performance of the work covered by the contract on the part of the contractor."

Section 35 of the "General Conditions" of the contract makes it clear that the engineer referred to is the "Chief Engineer of the Pennsylvania Turnpike Commission acting directly or through an assistant or other representative duly authorized . . .".

The Commission contends that the final quantities were determined on September 17, 1940, when the Chief Engineer sent the plaintiff a final computation of quantities showing the sum due to be $141,057.85. The letter of September 17th read as follows: ". . . We are also transmitting herewith final computation of quantities on your contract. You will note that a correction has been made increasing Item #29. After reviewing the quantities as finally determined you are requested to notify this office as to your acceptance or rejection of the quantities so determined. In the event you concur in the quantities computed by this office we will immediately issue the Final Estimate upon notification from you."

On October 8, 1940, plaintiff by letter "rejected said quantities as determined by the Commission" and added "Our excavation subcontractor is not satisfied with the number of cubic yards of borrow excavation." Correspondence then passed between the parties and on March

20, 1941, the Acting Chief Engineer sent a "final estimate to the contractor, which added $75 to the above sum of $141,057.85. No claim for "damages," "balance due" and "for additional quantities of work done" was filed by the contractor with the Chief Engineer until March 14, 1942. This claim was rejected in writing by the Chief Engineer on March 20, 1942, for the reason that it had not been made within thirty days of the determination of final quantities.

During the progress of the work the Chief Engineer wrote on February 8, 1940 to the contractor in reply to the latter's claim of February 7, 1940, for compensation above contract unit prices for additional costs incurred because of "certain facts therein set forth," as follows: ". . . I would refer you to our specifications wherein it is the contractor who has the right to present such claims as he may consider justified to the Commission, such claims to be presented within 30 days after acceptance of quantities indicated in the final estimate."

The word "acceptance" in that letter is to be noted. The contractor's position is: "1. That the interpretation placed on the contract by the Chief Engineer, that the contractor could apply for arbitration within 30 days after his acceptance of the final quantities is binding under Sec. 49 of the contract. 2. That the Chief Engineer never made any final determination of the quantities on September 17th and never intended so to do. 3. That the subsequent changes by the Chief Engineer in the figures and his statements accompanying the figures that they were subject to modification after consultation with the contractor show clearly that there was no intention on his part to depart from his original position that final determination needed the approval of the contractor."

The court below says of the use of the word "acceptance" that it was "very unfortunate" and "might have misled the contractor," but that if the contractor had examined the contract he would have discovered the Chief Engineer's error in using this word. In *Hague v.*

*Philadelphia,* 48 Pa. 527, this court pointed out "the folly of the contractor" relying on directions "to proceed outside the contract." It there said: "He [the contractor] knew the extent of their [the county commissioners] powers defined in the law, and referred to in the face of his written contract."

Sec. 4 of the Act of May 28, 1937, P. L. 774 provides, inter alia, that "all contracts and agreements relating to the construction of the turnpike and connecting tunnels and bridges shall be approved by the Department of Highways, and the turnpike and connecting tunnels and bridges shall be constructed under the supervision of the Department of Highways." It follows that the Chief Engineer had no power to change the terms and conditions of the contract, and the contractor is bound to take notice of that fact. We cannot interpret Sec. 49 of the contract which gives the Engineer the power "to give orders, explain and decide" and particularly the power to "determine the amount or quantity of the several kinds of work and the quality of materials which are to be paid for under this contract" and to "determine all questions in relation to the project and the construction thereof" and to "decide every question which may arise relative to the performance of the work covered by the contract on the part of the contractor" as giving him the authority to modify paragraph 80 of the General Conditions which provides for the arbitration of "all questions or disputes respecting any matter pertaining to this contract" and also contains the imperative 30-day provision quoted in the third paragraph of this opinion.

We agree with the court below that the Arbitration Act of May 20, 1937, P. L. 728, does not give the plaintiff the right to arbitrate his claim regardless of the provisions of the contract. There being in the contract between the parties an arbitration agreement, its terms must be complied with as a prerequisite to the right to arbitrate. We hold that the provision in the contract that reference of question in dispute "must be made"

within thirty (30) days "after final quantities have been determined" is an express "condition precedent" to such arbitration. See *Britex Co., Ltd. v. Schwab & Sons, Inc.,* 139 Pa. Superior Ct. 474.

The decree of the court below is affirmed.