**BADGETT MINE STRIPPING CORPORATION**

v.

**PENNSYLVANIA TURNPIKE COMMISSION.**

**Civ. A. No. 6441.**

United States District Court
M. D. Pennsylvania.
May 29, 1959.

Hull, Leiby and Metzger, Harrisburg, Pa., for plaintiff.

Henry E. Harner, Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

This matter is before the Court on motion of defendant for stay of action pending arbitration.

As grounds for the motion, defendant alleges that on March 8, 1955, plaintiff contracted with defendant for the construction of a portion of Pennsylvania Turnpike System; that the contract specifically provided for the arbitration of all claims for additional compensation; that on or about April 5, 1957, plaintiff submitted its claim for additional com-

pensation to Chief Engineer of the Pennsylvania Turnpike Commission in the sum of $1,043,287.29; that thereafter, on or about October 2, 1958, the said Chief Engineer, pursuant to the contract, rendered his decision denying all but $500 of the claim and so notified plaintiff; that no application for submission of plaintiff's claim to arbitration has been made; that the instant suit was filed without first following the arbitration procedure as required by the contract.

Plaintiff contends that the arbitration provisions of the contract have application only to disputes involving measurement and payment and the performance of the contract; that the claims of plaintiff, being admittedly for the agreed balance of the contract price and for damages resulting from defendant's breaches of contract, are not issues "referable to arbitration." Consequently, a stay may not be granted under either the Federal or Pennsylvania Arbitration Acts 9 U.S.C.A. § 1 et seq.; 5 P.S. § 161 et seq.

Section 11 of the contract is captioned "Measurement and Payment." Paragraph "H" of this section is captioned "Arbitration" and reads as follows:

"H. Arbitration. Neither the Contractor nor the Surety shall be entitled to present any claim or claims to the Commission or to the Chief Engineer of the Commission, either during the prosecution of the work or upon completion of the contract, for additional compensation for any work performed which was not covered by the approved drawings, specifications, or contract, or for any other cause, unless he or it shall have given the Commission or the Chief Engineer of the Commission due written notice of his or its intention to present such claim or claims as hereinafter designated; provided, that the Contractor or his surety shall not be denied the right to present any claim which is based on differences in measurements or errors in computations which were not disclosed until preparation of the final certificate.

"The written notice as above-required must have been given to the Commission or to the Chief Engineer of the Commission prior to the time that the Contractor shall have performed such work or that portion thereof giving rise to the claim or claims for additional compensation; or shall have given to the Commission or to the Chief Engineer of the Commission, within ten (10) days from the date the Contractor was prevented (either directly or indirectly) by the Office of the Chief Engineer of the Commission, from performing any work provided by the Contract; or within ten (10) days from the happening of the event, thing, or occurrence giving rise to the alleged claim.

"The Chief Engineer shall render his decision upon the claim in writing in due course, and when such decision has been served upon the Contractor he shall be deemed to have accepted the same unless he shall, within fifteen (15) days thereafter, have submitted the question, in the precise language it was presented to the Chief Engineer to a Board of Arbitration. Such Board of Arbitration shall consist of the Consulting Engineer as provided by the Trust Indenture, the Counsel of the Commission, and an Engineer who is the selection of the Contractor. Such questions shall be submitted to the Board in triplicate and shall conform in every detail with the information submitted to the Chief Engineer as above outlined. This Board, after such studies and/or hearings as it may deem advisable (proper notice of such hearings to be given the Contractor), shall submit its recommendations and decisions regarding all questions or disputes to the Pennsylvania Turnpike Commission and to the Contractor. This decision

shall be final unless the Commission or the Contractor shall resubmit in writing, within thirty (30) days from such notice, any and all questions to the said Board for the purpose of developing additional facts to enable the Board to determine whether it should change its decision; and the decision of the Board (sic) upon such resubmitted questions, if any, shall again be reported to the Commission and to the Contractor.

"The decision or opinion of the Board shall be final, binding, and conclusive upon the parties in the dispute, without exception or right of appeal; and all rights or right of any action at law or in equity, under and by virtue of the contract and all matters connected with it and relative thereto, are hereby expressly waived."

The Pennsylvania Arbitration Act of April 25, 1927, P.L. 381, as amended, 5 P.S. § 161 et seq., provides as follows:

"§ 161. Validity of arbitration agreements

"A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"§ 162. Stay of proceedings in violation of agreement

"If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall, on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

■ Counsel for plaintiff and counsel for defendant filed of record their Stipulation dated May 5, 1959, which reads, inter alia, as follows:

" * * * Under the First Count of the Complaint the amount sued for, $116,311.43, has been agreed to by the parties as the amount due under the Contract for work performed pursuant to it at the Contract Prices and for amounts payable to it in connection with it and/or Change Orders issued in connection with it and that, accordingly, under the First Count no question of arbitration is involved as to the amount claimed thereunder."

Accordingly, the motion is moot in so far as Count 1 of the complaint is concerned.

Counts 2 to 9 inclusive of the complaint allege that certain acts, omissions, hindrances and interferences of defendant and the general effect thereof upon the work of plaintiff constituted a radical change in the identity of the subject matter of the contract so as to constitute a breach thereof. Count 10 of the complaint is an alternative count, covering in the aggregate the scope of Counts 1 to 9 inclusive, on the theory of a suit in indebitatus assumpsit.

■ Since all of the moving factors in this diversity case happened in Pennsylvania, questions involving compliance with the terms of the contract should be determined by the law of Pennsylvania.[1] Consequently, the question of whether this Court should grant the stay requested by defendant pending arbitra-

1. Wilson v. Homestead Valve Manufacturing Company, 3 Cir., 1954, 217 F.2d 792, 797.

tion would necessarily be determined by the law of Pennsylvania.[2]

As above indicated, the arbitration clause in the contract appears as a sub-head under Paragraph 11, captioned "Measurement and Payment." The general contract contemplates the costs and quantities of materials and other items. The arbitration clause is limited to "additional compensation for any work performed which was not covered by the approved drawings, specifications, or contract, or for any other cause," only after submission to the Chief Engineer. If the contractor is dissatisfied with the decision of the Chief Engineer as to such claim, then the right is given the contractor to invoke arbitration before a Board consisting of the Commission's Consulting Engineer, the Counsel of the Commission and an engineer selected by the contractor.

The limited scope of the arbitration coverage in the instant case compared with the wide sweep of the coverage in Dickens v. Pennsylvania Turnpike Commission, 1945, 351 Pa. 252, 40 A.2d 421, 422, to wit: "All questions or disputes respecting any matter pertaining to this contract, or any part thereof, or any breach of said contract," would seem to indicate that the Commission did not intend any arbitration broad enough to cover its own breaches of contract.

The arbitration coverage in the instant case is definitely limited to matters of "measurement and payment" having to do with the fulfillment of the contract and nothing else. The words "or for any other cause" must be considered with the words preceding them and must be read as meaning "other such like."

"Under the rule of construction known as 'ejusdem generis,' where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. * * *

* * * * * *

"The rule finds application and has frequently been applied where such terms as 'other,' 'any other,' 'others,' 'or otherwise,' or 'other thing' follow an enumeration of particular classes, and where this occurs such words are to be read as 'other such like,' and are construed to include only others of like kind or character." 82 C.J.S. Statutes § 332b.[3]

Probably the leading case in Pennsylvania on the problem posed here is Lauman v. Young, 1858, 31 Pa. 306. In that case plaintiffs sought to recover damages from defendant for preventing or refusing to permit plaintiffs to perform the contract, defendant failing to furnish rights of way for railroad construction. The dispute as to rights of way was held not to be referable in arbitration. The court said, inter alia, "The right of trial by jury will not be taken away by implication merely, in any case."

In Somerset Borough v. Ott, 1904, 207 Pa. 539, 543, 56 A. 1079, 1080, the court said, "An agreement to submit questions that may arise as to the fulfillment of a contract does not give the right to pass on a claim for damages for nonfulfillment."

In Ruch v. York City, 1911, 233 Pa. 36, 45, 51, 52, 81 A. 891, 894, where the authority of an engineer to arbitrate disputes under a contract was held to be limited and not to extend to a claim for damages for defendant's breach of contract in failing to provide an outlet for sewers constructed by plaintiffs, the court stated:

"It is settled in this state that the parties to a building or construction

**2.** Jackson v. Atlantic City Electric Co., D.C.N.J.1956, 144 F.Supp. 551. See also Bernhardt v. Polygraphic Company of America, Inc., 1956, 350 U.S. 198, 76 S. Ct. 273, 100 L.Ed. 199.

**3.** See also, Kay v. Cain, 1946, 81 U.S.App. D.C. 24, 154 F.2d 305, 306; Brotherhood of Railway and Steamship Clerks v. Railway Express Agency, Incorporated, D.C. S.D.Ohio 1955, 137 F.Supp. 653, 657.

contract may legally provide therein that disputes arising out of the contract shall be submitted for decision to the architect or engineer, and that his conclusion or judgment shall be a final adjudication of the question submitted. Such submission may include the power to determine the right of the parties to liquidated damages under the terms of the contract. * * * The right of trial by jury, however, is not to be taken away by implication, and in order to oust the jurisdiction of the courts it must clearly appear that the subject-matter of the controversy is within the prospective submission. * * * An agreement of submission is not to be extended by implication beyond its plain words, and a provision therein to submit questions that may arise as to the fulfillment of a contract does not give the right to pass on a claim for damages for nonfulfillment. * * *

* * * * * *

" * * * The burden is upon the defendant to point out the provision in article 3 of the contract which empowers the arbitrator to pass upon these questions, and failing to do so the plaintiffs have the right to maintain this action and have their rights adjudicated by the court. * * *

* * * * * *

" * * * It cannot be seriously contended that the engineer, as arbitrator, would have jurisdiction to determine * * * what damages the plaintiffs had sustained if the defendant had refused to permit the plaintiffs to furnish the materials and do the work, * * *. With equal reason, it seems to us, that the arbitrator is without jurisdiction to determine * * *, what damages the plaintiffs sustained by the failure of the defendant to keep its covenant. * * *."

Under the allegations of Counts 2 to 9 inclusive, it would seem that plaintiff is on solid ground. "Where the agreement is mutual and dependent, and one party fails to perform his part the other party may unquestionably treat it as breached. * * *" Camenisch v. Allen, 1945, 158 Pa.Super. 174, 177, 44 A.2d 309, 310. See also Restatement of the Law of Contracts, §§ 312, 315.

Nor can there be any doubt that the determination of a claim for damages for breach of contract is a judicial function. In Philadelphia Housing Authority v. Turner Construction Company, 1942, 343 Pa. 512, 519, 23 A.2d 426, 429, the court had this critical comment on the question as to whether persons connected with one of the parties to a dispute can properly perform such a judicial function,

" * * * Provisions in contracts which give engineers or architects or heads of municipal or state departments power to decide questions are not arbitration provisions in the sense that the Arbitration Act provides. Boards of arbitration under that act are judicial bodies. Individuals given the right to decide in their own favor or in favor of the person who employs them cannot be said to be exercising a judicial function at all. They exercise a power given them by the contract to decide, not to judicially hear and determine."

I conclude that the issues raised by plaintiff's suit (for the agreed balance of the contract price and) for damages resulting from breaches of contract by defendant are not referable to arbitration under the arbitration provision of the contract relating to measurement and payment.

An Order will be filed denying defendant's motion for stay of action in this Court until an arbitration can be held.