## Adams County Asphalt Co. Inc. v. Pennsy Supply Inc.

332

*Richard B. Wickersham,* for plaintiffs.
*Ronald M. Katzman,* for defendant.

SCHAFFNER, *J.,* February 22, 1989 — On July 14, 1988, this action was commenced by the filing of a complaint. Among other things, the complaint requests the court to enjoin, preliminarily and permanently, defendant from proceeding to arbitrate, through the American Arbitration Association, claims it purportedly has against plaintiffs.

The court, by orders of August 5, 1988 and August 19, 1988, refused to grant the preliminary relief sought without hearing, and directed the parties to complete the pleadings by August 17, 1988 and to submit, by evidence or stipulation, their positions at hearing on September 2, 1988.

Prior to the September 2, 1988 hearing date, the parties filed preliminary objections to the complaint, an answer to that, an application to the court to stay the arbitration proceeding, an answer to that application, motions for expedited discovery, answers to that request, and briefs on the legal issues.

The court received evidence and heard argument on all of the issues raised in the complaint on September 2, 1988. The matter is now ripe for decision.

The central issue in this proceeding is not complex. The corporate parties have done business

with each other for years and, in fact, are owned by members of the same family. Robert Mumma II is the owner of plaintiff corporations and the defendant is owned by members of his immediate family. In their commerce together, plaintiffs, road builders, routinely ordered road building materials from defendant. A contract form, designed by Robert Mumma II, was regularly used by these parties. In practice, plaintiffs would order material from defendant, using the form referred to, and the building materials would be, in due course, delivered. When delivery occurred, the shipper and receiver retained copies and these copies served as the data base for defendant to bill, periodically, plaintiff corporations and for plaintiffs to verify the accuracy of such bills.

On the front of the contract form are spaces for the ordered goods to be specified, as to type and cost, with further itemization as to shipping date, job description, and so on. On the back of the form is set out, in eight paragraphs, provisions that the order is subject to. Paragraph 8 is the center of the dispute in this case and it reads:

"(8) Any dispute, controversy or claim under, arising out of or relating to this contract or its performance shall be submitted for determination to a single arbitrator designated by the American Arbitration Association under its Commercial Arbitration Rules. It is agreed that if either party shall desire relief of any nature whatsoever from the other party, that it will institute such arbitration proceedings within a reasonable time but in no event more than 90 days after the *delivery date* specified on the reverse side and that failure to institute such proceedings within said period shall be deemed a full waiver of any

claim for any relief. The parties agree that the decision and award of the arbitrator shall be final and conclusive, in lieu of all other legal, equitable or judicial proceedings and that no appeal or judicial review of the arbitrator's award shall be taken, but that any such award may be entered as a judgment and enforced in any court having jurisdiction of the party against whom enforcement is sought."

Defendant asserts that it is owed some $600,000 in unpaid charges from plaintiffs and that it must, because of paragraph 8, arbitrate its claims. Plaintiffs do not deny the applicability of paragraph 8 to the legal problem, and to the commercial transaction between these parties, and in fact also rely upon it. Plaintiffs contend that a condition precedent to arbitration is the institution of that process within 90 days of the delivery date set forth on the particular "field purchase order," the contract the subject of the dispute.

Plaintiffs' legal argument is founded on the case of *Dickens v. Pennsylvania Turnpike Commission,* 351 Pa. 252, 40 A.2d 421 (1945). In that case the Pennsylvania Supreme Court held that an arbitration clause which required reference of a dispute within 30 days after final determination of quantities was a condition precedent to arbitration. In the *Dickens* case, plaintiff Dickens wanted to arbitrate a claim against the Turnpike Commission and the lower court discharged plaintiff's rule seeking arbitration. The Supreme Court affirmed with the holding noted.

Defendant contends that the *Dickens* case, while not overruled specifically, is no longer the law in

Pennsylvania. Defendant asserts that a decision as to whether reference to arbitration has been timely made, where the contract does direct that disputes be arbitrable, is a question for the arbitration process to decide. Defendant suggests the case of *Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Company,* 460 Pa. 260, 333 A.2d 184 (1975) as stating and mandating their position. In the *Muhlenberg* case the contractor sought to have its claims arbitrated and the authority sought, by resort to the court of common pleas, to terminate the arbitration effort. The lower court refused the relief sought and the Supreme Court sustained the lower court, holding that the lower court's inquiry was limited to whether the parties had an agreement to arbitrate, and whether the dispute was within the scope of the arbitration provision. Whether or not a claim, otherwise arbitrable, was timely made, was for the arbitration process to resolve.

We accept as our guide, from our review of the cases, the premise that the arbitration process is to be encouraged as a manner of resolving disputes, and that this process should consider a dispute between parties who agreed to arbitrate differences between them and that this process should resolve all arguments as to timeliness. *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184 (1975); *Muhlenberg, supra;* and *Kwalick v. Bosacco,* 329 Pa. Super. 235, 478 A.2d 50 (1984). It may be that some contracts that refer to arbitration may contain language that would clearly define when the parties would arbitrate and would not arbitrate their claims. That is, we can conceive of contract provisions which, by their clarity, would set out

provisions that would show clearly that the contracting parties agreed that conditions precedent had to be met before arbitration would be appropriate and, similarly, would specify, without question, that if certain conditions were not met, arbitration was not available. This case, however, does not present to us such a clear-cut expression of the contracting parties' intentions.

The language of the contract, in paragraph 8, on the one hand, unequivocally indicates the parties' desire to have their disputes resolved by arbitration.

"(8) Any dispute, controversy or claim under, arising out of or relating to this contract or its performance shall be submitted for determination to a single arbitrator designated by the American Arbitration Association under its Commercial Arbitration Rules."

On the other hand, the evidence before the court fell short of showing either with reference to the contract or to the testimony of the parties, that there was any certain and definite condition precedent to arbitration that was clearly and without question not met.

To begin with, the evidence indicated that the parties used the contract forms referred to on a daily basis, whenever in fact a load of stones or concrete, or whatever, was needed by one of the plaintiffs to inject into a working construction project. Thus, for a highway project, a multitude of these forms might exist. Defendant states its claim in excess of $600,000 and this claim must be based in more than one of these contract forms. A reasonable inquiry might be whether the parties intended to arbitrate disputes that they had with regard to a single construction project, or whether they in-

tended to arbitrate separate claims, perhaps generated by successive faulty loads of stone, such that a series of a separate arbitrations, or referrals thereto, might be called for on a single project. Additionally compounding the lack of certainty before us as to whether defendant's claims were properly arbitrable, was plaintiff's indication that they did not even know what defendant's claim was based upon. Thus, there is much that must be examined as to the substance of defendant's claim: How many of the delivery forms are involved, what are the dates of delivery, and what project or projects are involved.

Plaintiffs' position presented to us was that the words *delivery date* were very significant and yet there was evidentiary uncertainty before us about the meaning of that phrase, in the context of the industry here involved. Mr. Mumma testified, for example, that in some instances material his companies received from the defendant may be tested by the owner of the project before it is accepted for payment. Sometimes, the testimony indicated, the test results would not come back for 60 to 90 days. In that specific instance, it would be very difficult for plaintiffs to institute the arbitration process within 90 days of the *delivery date* if that date meant the day the truck offloaded the stones. In such a situation, *delivery date,* to have any reasonable commercial meaning, would be the date that the materials were accepted as part of a project.

In summary, we are satisfied, at least in the factual weave of this case, that it is clear the parties desired their disputes be submitted to arbitration, that the kinds of disputes in this case are those that were to be referred to arbitration and it is not clear that an inviolate condition precedent to arbitration

was not met. We think, therefore, that it is not proper for us to stop the arbitration process that has been initiated with regard to defendant's claims.

We have before us plaintiffs' complaint, and application, by plaintiffs, to stay the arbitration proceedings, an answer to plaintiffs' application to stay the arbitration and, from defendant, preliminary objections to the complaint in equity. One of the preliminary objections to the complaint is a demurrer which, for the reasons we set forth above, we think it appropriate to sustain.

Accordingly, we enter the following

## DECREE NISI

And now, October 3, 1988, the demurrer to the complaint in this proceeding is sustained, the requests for relief set forth in the complaint are denied and the complaint is dismissed.

If no motion for post-trial relief has been filed within 10 days after the entering of this decree, a final decree upon praecipe will be entered.

## FINAL DECREE

And now, February 22, 1989, plaintiff's requests for post-hearing relief are denied. The demurrer to the complaint is sustained and the complaint is dismissed. We adopt, as the basis for the final decree, the adjudication filed October 4, 1988.

The prothonotary is directed to enter judgment in favor of defendant.