Canuso et al. *v.* Philadelphia, Appellant.

Argued April 14, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*James W. MacIntosh,* with him *Wm. E. Lingelbach, Jr., Francis B. Bracken* and *Morgan, Lewis & Bockius,* for plaintiffs (appellees No. 84, appellants No. 105).

*G. Coe Farrier,* with him *Herman N. Schwartz,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for defendant (appellant No. 84, appellee No. 105).

OPINION BY MR. JUSTICE DREW, May 17, 1937:

Early in 1930 the plaintiff contractors entered into a contract with the defendant municipality for the construction of a stone faced concrete arch highway bridge on the line of Henry Avenue over Wissahickon Creek in the city of Philadelphia. Detailed specifications and plans were included in the contract, which also provided for the erection by plaintiffs of the temporary false work or centering necessary to support the arches of the bridge during construction. It was specifically provided that all the plans for the false work were to be submitted to the engineers representing the city for approval. The work was to be done under the general direction of the Director of Public Works of the city of Philadelphia, whose decision "on any questions arising in connection with the performance of [the] contract shall be binding and conclusive upon the parties." It was further provided that the "total amount to be paid for the . . . work to be performed and such materials to be supplied . . . shall in no event exceed the sum of $1,770,000."

In execution of the contract plaintiffs engaged a steel fabricating corporation to erect the false work; defendant employed independent engineers to direct and supervise the entire construction. Plans for the false work were prepared by the fabricators and submitted to the engineers. The latter noted various changes, conferences were held, and the general plans and detail drawings were revised accordingly. Notable in the changes originating with the engineers was the require-

ment of expansion joints in place of rigid joints. These expansion joints involved the use of a toggle joint, including a gusset plate, or kind of bracket, or angular piece of steel, used for strengthening angles.

It is undisputed that in the fabrication and erection of the false work plaintiffs strictly followed the plans as finally approved by the engineers. Upon completion of the temporary work the construction of the bridge itself was begun. During the construction certain gusset plates, not sufficient to carry the superimposed weight of the permanent structure, yielded, and a portion of the false work buckled. Immediate steps were taken to reinforce the weakened structure and to obviate the dangerous condition. This done, a controversy arose over the responsibility for the collapse and the liability for the cost of repairs necessary to the false work prior to further construction of the permanent structure. The director was unwilling to make an immediate decision of the question. Three months later a temporary arrangement was effected and plaintiffs were instructed by letter from the director to "furnish the additional steel needed for reinforcement of the false work . . . You will bill in the regular way for your estimate. This order is given to you without prejudice." It was understood that the cost of the extra work be borne by the party ultimately determined to be responsible for the collapse. Pursuant to this arrangement plaintiffs reinforced the false work. From time to time, during the reconstruction of the false work, bills were submitted to defendant covering the work.

During the reconstruction and subsequent thereto the director proceeded with his inquiry to determine the responsibility for the failure of the structure. In the course of his investigation, he met with the interested parties, including plaintiffs and their counsel, the engineers, representatives of the city Bureau of Engineering and Surveys and the City Solicitor. He also had access to all plans and documents pertaining to the

bridge and the false work. Finally, after several months of inquiry, replying to the request of plaintiffs' counsel that he state the result of his investigation, the director stated that it was his opinion that there was no liability on the part of plaintiffs. It was his conclusion that the error was chargeable to the engineers who had approved the plans, and who were the city's agents. To quote from his letter: "I would also state that, at no time have I ever received any complaint regarding the contractors, . . . either as regards the manner of their work or of any refusal on their part to comply with any orders given by agents of the city. [The engineers], as agents for the city, approved all plans for the false work and this approval, in my opinion, exonerates the contractors from liability for the collapse of the false work and makes [the engineers] liable for any proper extra cost that may have accrued."

On July 19, 1932, the value of all the work was finally estimated and determined by the director, acting in conjunction with the engineers. The final approved estimate showed $1,688,878.85 due plaintiffs for normal work under the contract. That amount having been paid and further liability disclaimed by defendant, the present action of assumpsit was instituted to recover the value of the work necessitated as a result of the collapse, $100,794.58. The case was tried by the court without a jury. The trial judge found in defendant's favor. Subsequently the court en banc sustained plaintiffs' exceptions, the trial judge dissenting, and entered judgment for plaintiffs for $81,121.15, being the difference between the $1,688,878.85, which the contractors had already received, and $1,770,000, the contract limit for expenditures. The court en banc held that the decision of the director was binding upon the parties, that plaintiffs were not responsible for the loss occasioned by the collapse, and that they were entitled to recover for the extra work, being limited, however, by the maximum amount specified in the contract. The

trial judge dissented upon the ground that the approval of the engineers did not relieve the contractors, that there had been no valid arbitration and award in favor of plaintiffs and against the city, and that the contractors had been paid the full contract price. Both parties have appealed, plaintiffs insisting that they were not only entitled to the full value of the extra work, but that they were also entitled to interest from July 19, 1932, at which time the money was, so they insist, due and payable.

We are not impressed with defendant's contention that there was no valid award binding upon the municipality. The jurisdiction of the arbitrator extended to "any questions arising in connection with the performance of [the] contract." His authority was broad; it clearly included the power to settle the controversy in the instant case. The erection of the temporary false work was essential to the construction of the permanent structure, both were included in the same contract, and the fact that the dispute arose out of the faulty construction of the temporary work is immaterial. The designation of the Director of Public Works, under whose supervision the construction was to be effected, as the arbitrator of any dispute that might arise between the parties, was only logical. The practice of making a municipal official arbitrator of controversies arising between the municipality and a private contractor is well established: *Commonwealth ex rel. v. Pittsburg*, 206 Pa. 379; *Werneberg v. Pittsburg*, 210 Pa. 267; *Clark & Sons Co. v. Pittsburgh*, 217 Pa. 46; *Curran v. Philadelphia*, 264 Pa. 111.

Defendant's attack is largely to the informality of the procedure. It is argued that no formal hearings were held and that the city received no formal notice of arbitration proceedings. These objections are without merit. The essence of arbitration is its freedom from the formality of ordinary judicial procedure. The record discloses, however, several meetings and conferences

with the interested parties. The investigation was thorough and extensive. The city was represented by its solicitor and its engineers in a controversy ultimately to be determined by one of its own executives, sitting as arbitrator. It is vain for defendant to object to the lack of formal notice to the parties and of the hearings. It is significant that, although the city's representatives knew of the investigation that was being conducted, no formal hearing was requested.

Nor can it be successfully urged that the award was too vague and indefinite. The responsibility for the collapse was the only question presented for decision, and the director's conclusion that plaintiffs were not responsible, but that the engineers, the city's own agents, were at fault, could not be more definite. The binding effect of such an award upon the engineers, who were not a party to the arbitration agreement, is not here involved. No question of amount or method of payment was raised. These matters had been adjusted by agreement between the parties, pending the determination of the question of liability. Defendant's contention that the director's decision was not conclusive because it did not determine the amount of the damages is clearly untenable, for the amount of the damages was not in dispute and did not, therefore, require the arbitrator's consideration.

Unless restricted by the agreement of submission, and such is not the present case, an arbitrator is the final judge of both law and fact, and an award will not be reviewed or set aside for mistake in either: *P. O. S. of A. Hall Assn. v. Hartford Fire Ins. Co.*, 305 Pa. 107; *Kingston Coal Co. v. Glen Alden Coal Co.*, 312 Pa. 546; *Pierce Steel Pile Corp. v. Flannery*, 319 Pa. 332. From a valid award, there is no appeal to the courts: *Monongahela Navigation Co. v. Fenlon*, 4 W. & S. 205; *Commonwealth ex rel. v. Pittsburg*, 204 Pa. 219; *Clark & Sons Co. v. Pittsburgh, supra; Jackson v. McKeesport*, 305 Pa. 198. No fatal departure from the requirements

of a valid arbitration proceeding *(Curran v. Philadelphia,* supra) is presented. We are all of the opinion that the award was valid and as such conclusive upon the city.

Even if the finality of the award were impeachable, and the question of responsibility again reviewable on the merits, we cannot say that there was no foundation for the director's decision that plaintiffs were not responsible for the collapse of the false work. The issue is sharply disputed, but there is evidence to support the finding that it was the engineers employed by the city who required the arrangement that failed. Furthermore, there is evidence that the engineers had complete control over the plans for the erection of the false work. Under such circumstances, a contractor, even though a specialist, who builds according to the owner's plans, is not responsible for the sufficiency of the work: *Filbert v. Philadelphia,* 181 Pa. 530; *Miller & Sons Co. v. Homeopathic M. & S. Hospital,* 243 Pa. 502; *Tate-Jones & Co., Inc., v. Union Electric Steel Co.,* 281 Pa. 448.

The plaintiff's recovery was, however, correctly limited to $81,121.15. It was expressly provided in the contract that in no event would the city be liable for more than $1,770,000 under it. The present action is clearly brought upon the contract, based as it is upon its arbitration clause. That clause is, however, a part of the contract and must be read with the all-inclusive paragraph fixing the maximum liability of the city on the contract. All the power and authority of the arbitrator was derived from the contract. He was the instrument to execute the dictates of the agreement, and was powerless to exceed or change its terms: *McManus v. Philadelphia,* 201 Pa. 632. Insofar as the effect of his award was to exceed its terms it was null and void.

Plaintiffs are entitled to interest from July 19, 1932, the date when the value of the work was finally determined. The director's award in their favor had been made in the previous December, and the obligation to

pay a definite sum was fixed as soon as that sum was determined. Whenever a fixed sum of money is wrongfully withheld from a party to whom it is properly due such party is entitled to interest: *West Republic Mining Co. v. Jones & Laughlins,* 108 Pa. 55; *Gloeckler v. Imrie,* 118 Pa. Superior Ct. 441. Since the court below refused to allow interest for the period since July 19, 1932, its judgment must be modified accordingly.

Judgment affirmed as above directed.