## Philadelphia Housing Authority. *v.* Turner Construction Company, Appellant.

Argued December 3, 1941. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Harrison,* with him *Frederick A. Van Denbergh, Jr.,* for appellant.

*Abraham L. Freedman,* for appellee.

*M. Edmunds Dunlap, Seaton Schroeder* and *Robert R. McGoodwin,* arbitrators, as amici curiæ.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, January 5, 1942:

The court below set aside an award of arbitrators, amounting to $20,709.22, in favor of Turner Construction Company and against The Philadelphia Housing Authority, and entered judgment in favor of the latter. From this action Turner Construction Company appeals.

The proceeding in the court below was begun by a petition by the Housing Authority for a rule to show

cause on the Construction Company why an order should not be made invalidating the award, to which an answer was filed by the Construction Company asserting validity.

The controversy grows out of a contract between the parties for the building of 1,000 houses. While the Construction Company was the general contractor, the matter in dispute concerns only that part of the undertaking covering the painting of the interior of the houses. As to this, the contract says: "Paint for Interior Concrete and Interior Masonry Surfaces: (a) Cement-water Paint shall be a hydraulic base paint, delivered in powder form, ready for use, with the addition of water only. The powder shall consist of not less than 85% Portland cement, hydrated lime, hygroscopic salt, a small amount of water repellant metallic soap and small amounts of other agents or chemicals to impart workability. Small percentage of titanium oxide may be included. Limeproof pigment colors shall be added at the factory to provide the desired color tone, but the amount of color used shall not be in excess of 4 percent by weight. The paint shall be suitable for brush application to clean unpainted porous surfaces (such as concrete or masonry) and when applied shall flow evenly and cover solidly. When hardened and cured, the paint shall form a dampproof film that will not powder, chip or rub off, and may be washed repeatedly without damage to the surface film."

The contract provides that bidders shall visit the site of the proposed work and acquaint themselves with conditions attending the execution of the work and that they shall thoroughly examine and be familiar with the drawings and specifications. It then proceeds: "By submitting a bid the bidder agrees that he has examined the site and the specification and drawings and, where the specification requires in any part of the work a given result to be produced, that the specification and drawings are adequate and the required result can be produced under the specification and drawings. No claim for any extra

work will be allowed because of alleged impossibilities in the production of the results specified or because of inadequate or improper plans and specifications and wherever a result is required, the successful bidder shall furnish any and all extras and make any changes needed to produce, to the satisfaction of the Local Authority, the required result."

After some of the surfaces had been painted with the designated kind of paint, it was found that it powdered, chipped and rubbed off. Both sides concur that this could not be prevented, if cement water paint was used, due to the fact that the walls were not porous but smooth. When this situation developed, oil paint was used instead of cement water paint and it was agreed that the question of liability should be submitted to arbitration under the general arbitration clause of the contract.

There can be no question that under the language of the contract, as a matter of law, the contractor should not be permitted to maintain a claim against the Authority for the extra cost the contractor was put to by the necessity of using another kind of paint than that mentioned in the specifications. The contractor covenanted that the specifications were adequate, that the result required by them could be produced, that no claim for any extra cost would be allowed because of impossibilities in the production of the result or because of inadequate specifications and that wherever a result was required, it should furnish any and all extras and make any changes needed to produce to the satisfaction of the Authority the required result. Had claim been made for the extra cost by the contractor in the ordinary way by suit in assumpsit, the court would have been required to give binding instructions against it.

It is argued by appellant that the rulings in *Filbert v. Phila.*, 181 Pa. 530, 37 A. 545, and in *Canuso v. Phila.*, 326 Pa. 302, 192 A. 133, permit the contractor to recover the extra cost he was subjected to as a result of substituting another kind of paint. We are here dealing with

the language of the contract in the case before us and under it the claim is not maintainable. The situations in the two cited cases and in the case of *Mannella v. Pittsburgh,* 334 Pa. 396, 6 A. 2d 70, are entirely different from that in the pending case, because of the language of the contract we are considering. In none of these cases did the contract unequivocally state that the contractor assumed responsibility for the desired result of a particular part of the work or agree that any claim for any extra work would not be allowed because of impossibilities in the production of the results.

Does the fact that the parties resorted to arbitration alter the situation and enable the contractor to recover his claim? This turns upon whether the arbitration was at common law or under the Act of April 25, 1927, P. L. 381, 5 PS §161.

It is argued by counsel for the contractor that the arbitration was at common law with all its incidents, including finality of the award, with no power of court review, and by counsel for the Authority that it was under the statute, with court dominion over it as the statute prescribes: Act of 1927, Secs. 10 and 11, 5 PS §§170, 171.

The contract, after stating that all disputes arising under certain sections shall be decided by the Local Authority, provides: "All other disputes arising under this contract shall be decided by the Local Authority subject to arbitration as hereinafter provided. . . . One arbitrator shall be appointed by the Local Authority and one arbitrator shall be appointed by the Contractor, . . . In the event the arbitrators so appointed shall not agree within a period of ten days, then a third arbitrator, who shall be a competent and disinterested person, shall be appointed, and the decision of any two of the three arbitrators, shall be conclusive. The third arbitrator shall be appointed by the two arbitrators theretofore appointed and acting, . . . . The arbitrators shall have the right to retain and consult experts and competent authorities skilled in the matter or matters under arbi-

tration. The fees, cost and expense of the arbitrators shall be borne by the party against whom the arbitration is determined, or partially by each party according to the determination if it is not entirely against one party, or, in the case of a determination by compromise, by such party or parties as may be designated by the arbitrators."

To sustain their position that the arbitration was a common law one, counsel for the contractor point to the following circumstances: That under the provisions of the contract providing for arbitration, the findings of the arbitrators shall be conclusive; that the arbitrators shall have the right to retain and consult experts and authorities skilled in the matter under arbitration; that without objection from either of the parties witnesses were heard who were not sworn; that no complete stenographic transcript of the testimony was made, and that the arbitrators had control over the costs, all of which it is argued are attributes of a common law arbitration and not of one under the statute.

We held in the recent case of *Goldstein v. International Ladies' Garment Workers' Union,* 328 Pa. 385, 196 A. 43, that the Arbitration Act of 1927 did not entirely displace arbitration under the common law. To the same effect are *Isaac v. Donegal & Conoy Mutual Fire Ins. Co.,* 301 Pa. 351, 152 A. 95; *P. O. S. of A. Hall Asso. v. Hartford Fire Ins. Co.,* 305 Pa. 107, 157 A. 259; *Pierce Steel Pile Corporation v. Flannery,* 319 Pa. 332, 179 A. 558.

A summing up of our cases leads us to the conclusion that if the arbitration is at common law an award will be confirmed, because the arbitrators are the final judges of both law and fact.

In the agreement before us, the Act of 1927 is not mentioned. If it is to be taken into account, section 11(d) provides that where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict, the court may modify and

correct the award or resubmit the matter to the arbitrators.

What part does section 16 of the Act of 1927, 5 PS §176, play in reaching a decision as to whether the arbitration was under the Act? That section reads: "State and Municipal Contracts.—The provisions of this act shall apply to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, or any municipal corporation or political division of the Commonwealth shall be a party." By the 10th section of the Housing Authorities Law (Act of May 28, 1937, P. L. 955, 35 PS §1550) the Authority is declared to be an agency of the Commonwealth. With this legislative declaration in view, it is impossible to conclude that the law-making body did not intend that all arbitrations provided for in contracts with the Commonwealth or its agencies should be under the act. It is argued by counsel for the contractor that all that section 16 does is to extend the machinery of the act to state and municipal bodies which desire to make use of that machinery. In this connection, it is suggested there was doubt whether government officials would be justified in using arbitration in connection with public contracts and that section 16 was inserted in the act to settle that doubt.

Attention is called to the Act of May 13, 1925, P. L. 670, Sec. 1, 5 PS §180, which sets forth, that after the date of the act it shall be lawful to include in any contract executed by the Commonwealth or any agency thereof a provision that any matter in dispute arising under the contract shall be submitted to arbitration in accordance with the Arbitration Act of June 16, 1836, P. L. 715, 5 PS §1 et seq., and it is suggested that section 16 of the Act of 1927 is but confirmatory of this provision. The two enactments differ entirely in language and in scope and we are unable to accept the suggestion. Section 16 is mandatory and applies the provisions of the act of which it is a part to any written contract to which

the Commonwealth or any agency thereof is a party. This section impliedly repeals the Act of 1925.

Our decision in *Canuso v. Phila.*, 326 Pa. 302, 192 A. 133, is pointed to, but in that case there was no arbitration. The action was tried in court. It was based upon a finding of the Director of Public Works of the City, whose decision under the contract "on any questions arising in connection with the performance of the contract shall be binding and conclusive upon the parties." This presents a different situation from a contract provision to arbitrate. Provisions in contracts which give engineers or architects or heads of municipal or state departments power to decide questions are not arbitration provisions in the sense that the Arbitration Act provides. Boards of arbitration under that act are judicial bodies. Individuals given the right to decide in their own favor or in favor of the person who employs them cannot be said to be exercising a judicial function at all. They exercise a power given them by the contract to decide, not to judicially hear and determine.

In the Canuso case no question of the applicability of Act of 1927 was considered. Moreover, the record discloses that the contract contained this provision: "Nothing in this clause shall be taken to indicate that the Contractor, with the consent of the Director, cannot appeal to arbitration in accordance with the Pennsylvania State Law approved April 25, 1927." From which it is apparent that the parties did not regard the position of the director to be the equivalent of an arbitrator.

In *J. M. Davis Co. v. Shaler Township*, 332 Pa. 134, 2 A. 2d 708, speaking through Mr. Justice MAXEY as to a public contract, we said (p. 138) : "The arbitration provided for in contracts made after that act [Act of 1927] took effect must be proceeded with according to the terms of that statute. . . . When the parties entered into the arbitration agreement now before us, they ipso facto embodied in that agreement all of the provisions of the Arbitration Act." *Willis Bancroft, Inc., v. Millcreek*

*Township,* 335 Pa. 529, 6 A. 2d 916, turned entirely on the question whether the township was liable for an expenditure of over $500 without a written contract therefor and it was held that the township was not bound. What was said about the arbitration agreement in accordance with the Arbitration Act of 1836 was but incidental and was not intended to mean that we thereby sanctioned an arbitration of a dispute as to the liability of the township to the contractor for extra work under the Act of 1836.

It is argued in appellant's behalf that the court was without authority to enter final judgment against it, because the court did not have before it all the evidence which the arbitrators heard. We are of opinion that there is full authority to do so under the act.

The judgment is affirmed.