John MONTE and Robert Monte, trading as John Monte Company

v.

SOUTHERN DELAWARE COUNTY AUTHORITY.

SOUTHERN DELAWARE COUNTY AUTHORITY

v.

John MONTE and Robert Monte, trading as John Monte Company.

Civ. A. Nos. 32008, 32046.

United States District Court
E. D. Pennsylvania.

Jan. 8, 1963.

Schnader, Harrison, Segal & Lewis, By Arlin M. Adams, Philadelphia, Pa., for Southern Delaware Authority.

Truscott, Kline, O'Neill & Howson, By Frank F. Truscott, Philadelphia, Pa., for Monte.

WOOD, District Judge.

We have before the Court a motion to dismiss and a motion to remand brought by the Southern Delaware County Authority (hereinafter called the Authority).

John Monte and Robert Monte, t/a John Monte Company (hereinafter called Monte) brought Civil Action No. 32008 to confirm an arbitration award under Title 9 U.S.C.A. § 9. Monte also filed Civil Action No. 32046 to remove an action by the Authority brought in the Common Pleas Court of Delaware County to modify, correct or vacate the arbitration award won by Monte.

John Monte Company, a Michigan partnership, engaged in sewer construction, entered into a sewer construction contract with the Authority on October 28, 1958. Monte intended to perform all the work required on this job and pursuant to this intention, Monte moved both men and equipment from Michigan to Pennsylvania. Actual work was begun by Monte on November 22, 1958 and construction was accepted as completed by the consulting engineers on October 4, 1960. The second phase of Monte's con-

tract required a year's maintenance of this sewer project from October 4, 1960 until October 4, 1961. The sewer which Monte constructed was only a part of a system which joined with an outfall sewer to transport sewage to the Delaware River for treatment at the New Castle, Delaware treatment plant. Monte had nothing to do with the outfall sewer system.

Monte attempted to perform the work under the contract, but because of disputes with the consulting engineers Monte was forced to subcontract the work to certain subcontractors. Eventually, these disputes were submitted to arbitration and Monte received a unanimous award from the three arbitrators on August 31, 1962.

Subsequently, these proceedings were instituted by the parties.

Before we begin a discussion of these motions, it is important to a consideration of this unusual matter that we have an understanding of the purpose of the Federal Arbitration Act. The legislative intent of Congress was most ably expressed by Chief Judge Lumbard in Metro Industrial Painting Corp. v. Terminal Construction Co., Inc., 287 F.2d 382, 387 (2 Cir. 1961), cert. den. 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961).

" * * * The Congressional intent was not, therefore, to impose an adjudicative system on those who wished none nor was the intent to affect all contracts possessing certain interstate elements; the purpose of the act was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or, since the clarification in Lawrence, by state courts or legislatures. See American Airlines, Inc. v. Louisville & Jefferson County Air Board, 6 Cir., 1959, 269 F.2d 811.

"The significant question, therefore, is not whether, in carrying out the terms of the contract, the parties *did* cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they *contemplated* substantial interstate activity."

## DISCUSSION

■ Question No. 1: *Does the Pennsylvania Arbitration Act §§ 161–181 prevent the recipient of a statutory award from moving in the Federal Court for confirmation of the award under § 9 of the Federal Arbitration Act?* 9 U.S.C.A. § 9.

The applicable section reads as follows:

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. *If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.* Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." (Emphasis supplied)

The contract entered into between Monte and the Authority contains a gen-

eral provision regarding court proceedings. Section 26(c) of the contract provides as follows:

"If a dispute shall arise under this Contract on which the determination of the Consulting Engineers is not conclusive, the parties agree to facilitate the determination thereof by means of the submission of questions of fact involved in such disputes to arbitration in accordance with the method hereinafter provided, and all questions of law arising out of such disputes involving the legal rights and liabilities of the parties hereunder shall be determined by appropriate courts, either on such agreed statements of fact or on, or in, connection with the findings of the arbitrators as the case may be, and no claim of arbitration or submission thereto shall prejudice either of the parties with respect to any claim which it may make for the determination by a court of the proper legal interpretation of this Contract or for the determination by a court of the legal rights and liabilities of either of them under this Contract, and the determination of any question of fact by arbitration shall always be subject to the determination of the legal rights and liabilities of the parties by a court of competent jurisdiction. If either party disputes that a difference of facts exist which is submissible to arbitration under this Contract and such contention shall be presented to a court on a motion to compel arbitration to proceed, then the parties waive their right to claim a trial by jury of any of the issues involved in such proceeding.

"Neither of the parties shall be bound to present such contention prior to the arbitration, but by a proper statement made to the arbitrators may reserve such question for presentation by and consideration on a motion to confirm, vacate or modify the award rendered, or otherwise. The award of the arbitration shall, at the request of either party, be stated in such form that it presents the facts found upon the issues submitted and thereupon either party may ask the court to determine any question of law relating either to the duty to arbitrate the issues of fact presented to the arbitrators, if such questions were reserved as above provided, or the legal rights and liabilities of the parties under this Contract in relation to such issues. In a proper case, such award of the arbitrators shall be used for all purposes as an agreed statement of facts between the parties."

The contract does not provide for any particular court in which the award is to be confirmed. Therefore, if all the other jurisdictional requirements are met, namely: diversity of citizenship, $10,000.00 and commerce, this motion to confirm is properly before this Court. In the case of Hartmann Coal Mining Co., Inc. v. Hoke, 157 F.Supp. 313, 315 (E.D. Pa.1957) Judge Ganey said:

"Defendants give as an additional reason for this Court's lack of jurisdiction the proposition that conformation and recovery of an arbitration award in Pennsylvania must be had in the proper court of common pleas of this State as required by the Arbitration Act of 1927, P.L. 381, as amended, 5 Pa.P.S. §§ 161–181. *Such a proposition is not the law.* The Act of 1927 is remedial only; proceedings under it are cumulative and non-exclusive. The Act did not do away with the right to bring suit to recover an arbitration award. Isaac v. Donegal & Conoy Mut. Fire Ins. Co., 1930, 301 Pa. 351, 152 A. 95; Goldstein v. International, etc., 1938, 328 Pa. 385, 394, 196 A. 43; Sukonik v. Shapiro, 1939, 333 Pa. 289, 5 A.2d 108; Lowengrub v. Meislin, 1954, 376 Pa. 463, 103 A.2d 405." (Emphasis supplied)

The Federal Courts of other jurisdictions are also in accord with this proposition.

See Gaddis Mining Co. v. Continental Materials Corp., 196 F.Supp. 860 (D.C. 1961).

■■ We do not have the problem of deciding whether this award was a statutory award or a common law award.[1] The contract does not specifically provide for the Arbitration Act of 1927. Section 26(d) of the Agreement provides, inter alia:

" * * * Except as otherwise provided, the arbitration shall proceed under and pursuant to the rules of the State of Pennsylvania, the parties hereby certifying and agreeing that they have read and are familiar with said rules. * * * "

Both of the parties concede that they followed the Act of 1927 in all their arbitration hearings. Also, since the Authority is a Municipal Corporation created under the Municipality Authorities Act of 1945, Article I, 53 P.S. §§ 301 through 322, it is an agent of the State of Pennsylvania. In re Simon's Appeal, 408 Pa. 464, 184 A.2d 695 (1962). The Arbitration Act of 1927 at § 16, 5 P.S. § 176, makes it mandatory that all contracts made by any municipal corporation, etc., shall apply the Arbitration Act of 1927 to any provision for arbitration in the contract. Philadelphia Housing Authority v. Turner Construction Co., 343 Pa. 512, 23 A.2d 426 (1942). Also, the record does not reveal any irregularities which would indicate that the Arbitration Act of 1927 was not followed. Therefore, no presumption arose that this was a common law award. A. J. Curtis & Co. v. D. W. Falls, Inc., 305 F.2d 811 (3 Cir., 1962).

■ The Authority contends that 5 P.S. § 178 of the Arbitration Act of 1927 prevents the Federal Court from having jurisdiction. Section 178 of the Pennsylvania Arbitration Act provides in pertinent part as follows:

"Except as otherwise specifically indicated, all references in this act to the courts are to be construed to mean the common pleas courts of the county having jurisdiction of the parties or the subject matter. If prior to the award, any court of common pleas shall have entertained any motion in respect to said arbitration, such court shall retain jurisdiction, and all subsequent proceedings shall be filed in said court. * * * *"

This is indeed a tortured construction of the Act. The Federal Arbitration Act is coextensive with the Pennsylvania Arbitration Act. If the jurisdictional requirements are met, then the Federal Act controls because the parties never specified in the contract which court would be proper for such proceedings. The main thrust of the Authority's position is based on the fact that Monte had started a declaratory judgment proceeding in the Court of Common Pleas of Delaware County No. 1790, March Term, 1960. The Authority answered the declaratory judgment complaint and the matter was at issue. Almost one year later, to wit, April 3, 1961, the Authority filed a Petition for Stay of the Action pending Arbitration, and an Answer raising questions of law. The Court of Common Pleas did *not* grant the stay, but rather entered an order that certain questions of law be presented for determination of the Court at the Argument Court. This is the proper procedure in Pennsylvania, and the Court could have refused to stay the proceeding if it found the nature of the dispute was not within the arbitration agreement. Rosenfeld v. Rosenfeld, 52 Lack. Jur. 226 (1952); Amberlavage v. Lehigh Valley Coal Co., 8 Sch.Reg. 143 (1941); and Ruch v. York City, 233 Pa. 36, 37, 81 A. 891 (1911) (liquidated damages clause in sewer contract).

■ It is significant to point out that paragraph 14 of the complaint, in this declaratory judgment proceeding, alleged that the liquidated damage provision of

1. Review of Awards—Was the Arbitration Common Law or Statutory? Lewis H.

Van Dusen, Jr., 24 Temp.L.Q. 146 (1950–1951).

the contract was a penalty. In the Authority's Answer to the complaint, it admitted in paragraph 14 that this was a *question of law* for the Court. This indicates that the Authority recognized that this question of the liquidated damages was properly before the Court. This supports Monte's contention that the only reason it brought this declaratory judgment was because it felt this damage provision was illegal. A party to an arbitration agreement does not give up its rights to seek relief in the Courts on questions challenging the validity of the very contract under which the arbitration arose. Also, an occasion may arise, such as a wildcat strike, which would require the interposition of injunctive relief by a Court of Equity, even though the parties concerned had agreed to arbitrate all labor disputes in their contracts.

Monte voluntarily discontinued the declaratory judgment proceeding. The Authority further contends that since it filed the motion to stay the declaratory judgment in the Common Pleas Court that this forever committed the parties to the Common Pleas Court. The Authority emphasizes the words of 5 P.S. § 178 which states in part:

> " * * * If prior to the award, any court of common pleas shall have entertained *any motion in respect to said arbitration,* such court shall retain jurisdiction, and all subsequent proceedings shall be filed in said court. * * * "

Now in order to give the statute the interpretation which the Authority contends, we will have to say that a *motion to stay a declaratory judgment* proceeding *"pending"* arbitration is a motion "in respect to said arbitration." We do not agree with this contention. An arbitration is not begun until one of the parties requests arbitration pursuant to the agreement. At the time this motion was made no one had requested arbitration. If one party requests the other party for arbitration and is refused, he can come into court and compel arbitration pursuant to § 163 of the Arbitration Act of 1927. This is one of the signifi-

cant features and differences between the Arbitration Act of 1927 and common law arbitration. This motion to stay the declaratory judgment proceeding was merely ancillary to the court proceeding which was the only proceeding between the parties then in existence.

This arbitration between Monte and the Authority did not come into existence until Monte demanded arbitration by letter dated *April 18, 1961.* If an arbitration situation was in existence at the time the Authority made its motion to stay the court proceeding, there was no need for the Authority also to demand arbitration on *April 20, 1961* by letter. This contradicts the Authority's position completely in this regard, and lends emphasis to the proposition that no arbitration situation existed as of *April 3, 1961* when the motion to stay was filed.

■ Subquestion A: *Does this contract evidence a transaction involving interstate commerce?*

It is recognized that we have the diversity of citizenship requirements since Monte is a Michigan partnership and the Authority is a Pennsylvania Municipal Corporation. Also, the amount in controversy, being in excess of $200,000, is well beyond the jurisdictional amount.

The only jurisdictional matter in dispute is whether this transaction evidenced interstate commerce.

Sections 1 and 2 of the Federal Arbitration Act limit the Court's jurisdiction under the Act to situations involving transactions in interstate commerce. Section 1 defines such commerce as follows:

> " * * * 'commerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, * * * ."

The leading case for defining commerce is Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). This case concerned an employment contract containing an arbitration clause. The Court held that federal jurisdiction attached only when the contract evidenced a transaction involving commerce. Ross v. Twentieth Century-Fox Film Corporation, 236 F.2d 632 (9 Cir., 1956), followed the definition of the Bernhardt case. The most important case cited by either party dealing with this commerce question is Metro Industrial Painting Corp. v. Terminal Construction Co., Inc., 287 F.2d 382 (2 Cir., 1961), cert. den. Metro-Goldwyn Pictures Corp. v. Sheldon, 368 U.S. 817, 60 S.Ct. 263, 84 L.Ed. 515 (1961). The Court of Appeals for the Second Circuit in that case stated at page 384 as follows:

"Respondents correctly assert that diversity of citizenship alone was not enough to empower the court below to compel arbitration under Section 4 of the Act, and that, in addition, the contract in which the arbitration clause is included must be one 'evidencing a transaction involving commerce' within the meaning of Sections 1 and 2 of the Act. Robert Lawrence Co. v. Devonshire Fabrics Inc., supra [2 Cir., 271 F.2d 402]; see Bernhardt v. Polygraphic Co. of America, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199. Irrespective of whether Congress intended the coverage of the Act to be as broad as the constitutional dimensions of the commerce power, the facts found by the judge below are sufficient to support a finding that the transaction evidenced by the contract was within the statutory requirements of the Arbitration Act. It is true that the actual painting work was to be done within the confines of one state (Florida). However, as the trial judge correctly found, many other interstate elements were involved in the performance of this contract. For example, twenty per cent of

Metro's work force at the Florida site, as well as a substantial number of supervisory personnel, were transported from New York City to Florida; and materials used by Metro's employees were purchased from other states, as were materials used by other subcontractors, many of whom were also from out of state. The transaction evidenced by the contract thus clearly involved commerce. See International Broth. of Elec. Workers v. N. L. R. B., 1951, 341 U.S. 694, 699, 71 S.Ct. 954, 95 L.Ed. 1299; Del E. Webb Const. Co. v. N. L. R. B., 8 Cir., 1952, 196 F.2d 841, 843 [38 A.L.R.2d 402]."

The "test" developed by this case is in the concurring opinion of Chief Judge Lumbard which states as follows, at page 387:

"The significant question, therefore, is not whether, in carrying out the terms of the contract, the parties did cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they contemplated substantial interstate activity."

Using this standard Judge Lumbard applied the test to the facts of the Metro case as follows at page 388:

"In this case, at the very top of the written contract between the parties was the following designation:

"Name of Job
Armed Services Housing Project
Homestead Air Force Base
Homestead, Florida

"The body of the contract named one of the subcontractors as 'Metro Industrial Painting Corp. of 404 Exterior Street, Borough of Manhattan, New York, New York.' When taken together with the uncontradicted statement in the affidavit submitted by the President of the Metro Corporation that at least 20% of the men

working on the project were transported from New York to Florida, and that the main supervisory forces were from New York, it appears reasonably clear that the parties anticipated substantial interstate traffic. The trips made by supervisors must have been foreseen, as well as the interstate transportation of some of the working force to Florida. The contract was therefore, one 'evidencing a transaction involving commerce,' it came within § 2 of the Arbitration Act, and federal law controlled construction of the arbitration clause."

Now, applying the test of the majority and concurring opinions to the instant case we find as follows:

At the very top of the written contract between the parties was the following designation:

"The Upper Chichester Municipal
Authority
"Upper Chichester Township
"Delaware County, Pa."

In the middle of the contract cover we find:

"Sewer System
and
"Pumping Station"
"Contract Documents and Specifications"

The body of the contract at page 13 named "John Monte Co. of 21144 Greenfield Rd., Oak Park 37, Michigan," as contractor. Of all the employees employed by Monte from the beginning of this job on October 22, 1958, until the end of the maintenance period on October 4, 1961, a sufficient number were non-resident Pennsylvanians as to indicate substantial interstate traffic was anticipated. This is not counting the two non-resident supervisors who made numerous interstate trips from Michigan to Pennsylvania from October 1958 until October 1961.

The employee figures which seem to be either uncontradicted in the Monte affidavits or representative as proved by the Authority depositions are the following:

### John Monte Co.

| Year | Total Employees | Non-Residents | Percent |
|------|-----------------|---------------|---------|
| 1958 | 12 | 7 | 58.3 |
| 1959 | 89 | 15 | 16.8 |
| 1960 | 61 | 12 | 19.6 |
| 1961 | 6 | 4 | 66.6 |

John Monte Co. brought equipment totaling $107,603.72 from Michigan to Pennsylvania in 1958 with the intention of doing all the work itself. One of Monte's subcontractors, Finelli Brothers, Inc., purchased $10,710.06 worth of pipe which was manufactured and shipped from Ohio to Pennsylvania. During the three year period covering this job, Monte made other interstate purchases which required shipment from other states to Pennsylvania totaling $23,000. The insurance and materialman's bond which Monte purchased were procured from a Michigan insurance broker who was an agent for Maryland Casualty Co. "The contract was, therefore, one 'evidencing a transaction involving commerce', * * *." Metro Industrial Painting Corp. v. Terminal Construction Co., supra, 287 F.2d at p. 388.

Question 2: *Was the Authority's Motion to Vacate the Award removable by Monte and was such removal timely?*

On September 4, 1962 the Authority filed with the Common Pleas Court of Delaware County docketed as of No. 3244, June Term, 1962 a Motion to Modify or Correct Award or to Vacate Award. On or about September 12, 1962 the John Monte Company filed with this Court a Petition for Removal of the Motion to Modify or Correct Award or to Vacate Award, said Petition being docketed as Civil Action No. 32046. The John Monte Company at the same time filed the required bond and promptly after the filing of the Petition and bond John Monte Company gave written notice thereof to the Authority's Solicitor and filed a copy of the Petition with the Clerk of the Common Pleas Court of

Delaware County. All this was done in accordance with the terms of 28 U.S. C.A. § 1446 and the removal was thereupon effected.

The right of removal is governed by Section 1441 of Title 28 U.S.C.A. the pertinent provisions of which read as follows:

> " * * * any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant * * * to the district court of the United States for the district * * * embracing the place where such action is pending."

The Authority advances the argument that although it filed the Motion to Modify or Vacate the Award in Delaware County, Monte was actually the plaintiff and therefore could not remove the motion to this Court. This position is based on the fact that Monte first sought Court intervention by filing the declaratory judgment action. As previously stated, the declaratory judgment was started *before* any arbitration situation existed. Any action taken in the declaratory judgment was independent of the arbitration.

The leading cases which have been cited concerning removal are the following:

Victorias Mill. Co. v. Hugo Neu Corporation, 196 F.Supp. 64 (S.D.N.Y.1961), was a case in which, *after an arbitration award*, Neu petitioned the New York Supreme Court to vacate the award. Victorias then moved in the Federal Court to confirm the award, and petitioned to remove the State Court proceeding. Neu moved in the District Court to remand its motion to vacate. The Court held that although Victorias initially demanded the arbitration, nevertheless, since it was the passive party in Neu's State Court action to vacate the award, Victorias was to be considered the defendant and a proper party to remove.

The Authority relies on the Victorias case, but ignores the fact that the motion to vacate was brought *after an arbitration award* had been rendered. This means an already *existing arbitration* had been completed between the parties. Victorias does not support the Authority's contention that Monte's declaratory judgment proceeding was an initiation of Court proceedings in an arbitration situation. No arbitration had been demanded by either party at that time. The same situation holds true for the Authority's motion to stay the declaratory judgment. No arbitration had been begun by either party at that time. The Court was asked to *stay its own Court proceeding* and not to *stay an arbitration* as was the situation in Minkoff v. Budget Dress Corp., 180 F.Supp. 818 (D.C.1960), where Judge Dimock held that the proceeding which was removable was the *motion to stay arbitration* which Budget Dress had made in November 1958. The Court, in Budget Dress, also formulated a test whereby the party who institutes the arbitration proceeding as plaintiff is forever identified as such for the duration of the proceeding. This includes *all* Court proceedings no matter who brings them.

We cannot accept this test as it fails to recognize that *"at the time the notice for arbitration* was served it could not be predicted whether the proceeding would ever come before any court."* Minkoff v. Scranton Frocks, Inc., 172 F. Supp. 870 (S.D.N.Y.1959).

Another case, Wamsutta Mills v. Pollock, 180 F.Supp. 826 (S.D.N.Y.1960) was decided by Judge Dimock the same day that he decided Budget Dress Corp. v. Minkoff, supra. In Wamsutta Mills, Judge Dimock limited his test to New York arbitration proceedings by saying at page 828:

> "Crucial to the Minkoff decision was the fact that the arbitration was conducted pursuant to New York law. That meant that, once the arbitration proceeding got into court, each phase of it whether brought by the employer or by the Union was a step in a 'special proceeding' and

part of the same 'civil action' for removal purposes."

 The fact that Monte started the arbitration proceeding does not denominate him as plaintiff for all proceedings. The arbitration situation in the instant case was not in Court until the Authority filed the award and the motion to modify, correct or vacate the award in Delaware County on September 4, 1962. The removal by Monte filed in this Court on September 12, 1962, was timely since it was within twenty days of the filing of the motion in Delaware County. The removal jurisdiction of the Federal Court is in a sense derivative. A. J. Curtis & Co. v. D. W. Falls, Inc., 305 F.2d 811 (3 Cir., 1962). The Common Pleas Court of Delaware County had jurisdiction of this motion to modify under §§ 10 and 11 of the Arbitration Act of 1927, 5 P.S. §§ 170, 171. Therefore, the Federal Court can remove the motion because the jurisdictional requirements of diversity, amount and commerce have been met as we have already stated. The District Courts have original jurisdiction of motions to vacate awards and motions to confirm awards pursuant to the Federal Arbitration Act, §§ 9 and 10, 9 U.S. C.A. § 1 et seq., where commerce is involved. The agreement between Monte and the Authority which states that the rules of Pennsylvania will be followed in respect to the arbitration does not oust the jurisdiction of the Federal Court. Hetherington & Berner, Inc. v. Melvin Pine & Co., 256 F.2d 103 (2 Cir., 1958). The mere reference to Pennsylvania's laws and rules of arbitration in the contract [2] cannot prevent Monte from bringing proceedings in the Federal Court concerning the award, as long as the jurisdictional requirements have been met. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1934).

**ORDER**

AND NOW, this 8th day of January, 1963, the Motion to Confirm the Award and the Motion to Modify, Correct or Vacate the Award are properly before this Court and the Motions to Dismiss and to Remand are DENIED, and the Motion to Strike Affidavits is DENIED.

2. Ross v. Twentieth Century-Fox Film Corporation, supra. Judge Hastie distinguished very clearly that when a contract *specifically* refers to a *particular* title and section of State law as controlling an arbitration we must give effect to it. In the Ross case, the contract stated that the award was to be effective as an arbitration award under Title 9 § 3 of the Code of Civil Procedure of the State of California.