## J. A. & W. A. Hess, Inc. *v.* Hazle Township.

Argued April 5, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Frank D. Llewellyn,* with him *George I. Puhak,* for appellant.

*Thomas L. Kennedy,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., June 4, 1973:

This case involves an action for money damages instituted by Appellant Hess, Inc. against Hazle Township, Luzerne County.

In 1966, Hazle Township advertised for bids for 100 tons, more or less, of No. 1B crushed gravel to be applied to the Township streets. Appellant submitted a bid which proposed a unit price of $3.50 per ton of material and a resultant total contract price of $350.00. Upon award, Appellant filed a bond in the amount of $175.00 representing 50% of the contract price.

Appellant alleges, and the evidence tends to establish, that it subsequently delivered over 6,000 tons of stone to the township. It then claimed payment of $23,625.00.

The township demurred to the alternative bases of the action which were (1) recovery on the express contract; and (2) recovery on the theory of quantum mer-

uit. The lower court overruled the demurrer on the express contract issued but sustained the demurrer on the quantum meruit cause of action.

Trial was held before OLZEWSKI, J., sitting without a jury, and Hess was awarded a verdict in the amount of $350.00. After a motion for new trial was denied by the lower court en banc, Hess appealed to us.

At the outset, it is important to note that Hess did not appeal the lower court's ruling on the quantum meruit issue[1] and so it is not before us. Appellant presses the express contract as the basis of recovery and it is settled that a right of recovery in quasi-contract cannot be born of a suit on an express contract. *Irvine Estate*, 372 Pa. 110, 92 A. 2d 544 (1952); *Luzerne Township v. Fayette County*, 330 Pa. 247, 199 A. 327 (1938).

We hold that Appellant cannot recover the additional sum on the basis of the written contract.

---

[1] By so proceeding, Appellant has perhaps precluded from consideration a strong argument on the theory of quasi-contract. Our courts have held that "where a municipality or other local agency of government has voluntarily accepted and retained the benefits of a contract which it had the power to make but which was defective in the method of its execution and consequently invalid, the party who, by furnishing labor or material, has conferred such benefits may recover compensation therefor in a suit, not on the invalid contract itself, but upon a quantum valebat, quantum meruit, or for money had and received; [cite] common honesty requires that a municipality or other governmental agency should not be allowed, any more than a private individual, wholly to repudiate an obligation of which it has deliberately appropriated the benefits, and in such cases, if the municipality does not restore the property which it has received, an implied obligation to make compensation payment for it arise: [cites]" *Luzerne Township, infra*, at 253, 199 A. at 330. Although that case noted that this principle should not apply to paving situations where the benefits cannot be surrendered and hence retention is not voluntary, this issue is not foreclosed. Professor Antieau designates the rule as the preferred position. *See* 1 Antieau, *Municipal Corporation Law*, §10.12.

The written signed contract provided for the purchase of "100 tons more or less" of gravel at $3.50 per ton for a total contract price of $350.00. The contract also provided that the vendor (Hess) would furnish a bond in the amount of 50% of the contract and further provided that "this contract constitutes the entire agreement between the parties hereto and its provisions shall not be changed, except in writing, agreeable to both parties."

Section 802 of the Second Class Township Code,[2] 53 P.S. §65802 authorizes them to make contracts and provides in part that "all contracts or purchases in excess of one thousand five hundred dollars, except those hereinafter mentioned shall not be made except with and from the lowest responsible bidder, after due notice in one newspaper of general circulation, published or circulating in the county in which the township is situated. . . .

"(b) The amount of the contract shall in all cases, whether of straight sale price, conditional sale, bailment lease, or otherwise, be the entire amount which the township pays to the successful bidder or his assigns in order to obtain the services or property, or both, and shall not be construed to mean only the amount which is paid to acquire title or to receive any other particular benefit or benefits of the whole bargain.

. . . .

"(d) The successful bidder, when advertising as required herein, shall be required to furnish a bond with suitable reasonable requirements, guaranteeing performance of the contract, with sufficient surety in the amount of fifty percentum (50%) of the amount of the contract. . . ."

---

[2] Act of May 1, 1933, P. L. 103, §802, as amended, 53 P.S. §65802.

The legislative directives in these provisions are mandatory and must be observed. *Luzerne Township v. Fayette County,* 330 Pa. 247, 199 A. 2d 327 (1938). Where the statutory mode of making a public contract is not observed, it cannot be enforced against the governmental agency. *Willis Bancroft, Inc. v. Millcreek Township,* 335 Pa. 529, 6 A. 2d 916 (1939); *Luzerne Township v. Fayette County,* 330 Pa. 247, 199 A. 2d 327 (1938). These rules preclude appellant's recovery in this case. The compensation claimed ($23,650) fails because it does not comply with the terms of the Code which require competitive bidding, a precise and stated total contract figure and the posting of a 50% bond. Continued acceptance by the municipality of deliveries beyond the 100-ton specification could not bind the township to pay compensation *under the existing contract.* Those dealing with a township through its officers must, at their risk, take notice of the scope and limitations of the authority of those officers and must stand ready to accept the consequences if the requirements prescribed by law have not been met. *Willis Bancroft, Inc. v. Millcreek Township,* 335 Pa. 529, 6 A. 2d 916 (1939); *Luzerne Township v. Fayette County,* 330 Pa. 247, 199 A. 327 (1938). *See* 10 McQuillin, Municipal Corporations §29.04; 3 Antieau, *Municipal Corporation Law,* §23.15.

Not only were the statutory provisions ignored but the contract provided that "[t]his contract constitutes the entire agreement between the parties hereto and its provisions shall not be changed, except in writing, agreeable to both parties." The breach of that provision, in itself, precluded Appellant's claim for extra compensation *on the original contract. See Philadelphia Housing Authority v. Turner Construction Co.,* 343 Pa. 512, 23 A. 2d 426 (1942).

Appellant urges us to agree that the term "100 tons more or less" can be expanded to impose liability on

the township for approximately 6,000 tons. In support thereof, it cites *Ruth-Hastings G. T. Co. v. Slattery,* 266 Pa. 288, 109 A. 695 (1920) for the proposition that a fixed amount "more or less" as stated in the contract does not relieve the vendee of liability for quantities delivered in excess of the stated amount when the parties act in good faith. However, the contract in *Hastings* called for a number of bushels of wheat, more or less, *as the vendee may require.* That flexibility is not in this case. No rational person would interpret the term "100 tons more or . . ." to permit approval of liability for the delivery of 6,000 tons.

We are not here concerned with the Township's apparent enrichment. Hess can blame no one but itself. *Willis Bancroft, Inc. v. Millcreek Township,* 335 Pa. 529, 6 A. 2d 916 (1939).

Strict compliance with the statutory mandates eliminates the possibility of fraud or favoritism. Restrictions and controls of conduct provide protection for the township constituents in that they guard against the practice of awarding contracts without the bids, appropriate and proper security and the many other devices developed by the ingenuity of unscrupulous contractors who deal with municipalities. As written in *Willis Bancroft,* 335 Pa. at 539-40, 6 A. 2d at 921, "without such interpretation . . . [the statutory mandates are] useless; that a contract solemnly entered into between a municipal corporation in writing can be altered, added to or amended by the mere say so, of a subordinate officer and his subordinates, leaves the corporation subject to the very abuses which flow from unchecked fraud, falsehood and dishonesty the statute seeks to guard against."

Affirmed.